## STATE OF MARYLAND *v.* MICHAEL DANA GIBSON

[No. 161, September Term, 1967.]

*Decided June 3, 1968.*

The cause was argued before MURPHY, C. J., ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*L. Robert Evans, Deputy State's Attorney for Baltimore County,* with whom were *Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General,* and *Samuel A. Green, Jr., State's Attorney for Baltimore County,* on the brief, for appellant.

*Richard D. Byrd* and *Donald J. Gilmore,* with whom was *Wylie L. Ritchey* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

A six-count indictment was returned against appellee Gibson by the Grand Jury of Baltimore County as a result of the death on September 10, 1966 of Diane Grempler by reason of appellee's alleged illegal and improper operation of a motor vehicle. Each of the first three counts of the indictment charged

that appellee "did feloniously kill and slay" the deceased as a direct result of his commission of certain statutory misdemeanors, *viz.,* that he operated his motor vehicle in violation of the motor vehicle laws of Maryland, Maryland Code (1967 Repl. Vol.) Article 66½, and more specifically

1. *As to the first count*—that appellee, in violation of Sections 233 and 242, did fail to stop his motor vehicle in obedience to a stop sign and grant the right of way to a vehicle traveling on a paved highway.
2. *As to the second count*—that appellee, in violation of Section 209, recklessly operated his motor vehicle upon a public highway.
3. *As to the third count*—that appellee, in violation of Section 206, operated his motor vehicle under the influence of intoxicating liquors.

The fourth count of the indictment charged that appellee "did feloniously kill and slay" the deceased as a direct result of his commission of a misdemeanor, *viz.,* that he violated the provisions of Section 19.2 of the Baltimore County Code in that he bought, consumed, and possessed an alcoholic beverage on a public highway, he then being a minor.

Each of the first four counts of the indictment expressly characterized the offenses therein charged as constituting a "common law misdemeanor-manslaughter."

The fifth count of the indictment charged that appellee, while operating a motor vehicle "unlawfully in a grossly negligent manner" caused the death of the decedent. This count of the indictment was expressly based upon Section 388 of Article 27 of the Maryland Code (1967 Repl. Vol.), which provides, in pertinent part, as follows:

> "Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle in a grossly negligent manner, shall be guilty of a misdemeanor to be known as 'manslaughter by automobile, motor vehicle, motorboat, locomotive, engine, car, streetcar, train or other vehicle,' and the person so convicted shall be sentenced to jail or the house of correction for not

> more than three years, or be fined not more than
> $1,000.00 or be both fined and imprisoned.* * *"

The sixth count of the indictment is not here pertinent.

On March 27, 1967, appellee filed a motion to dismiss the first four counts of the indictment on the ground that each of these counts charged a violation of the common law, *viz.,* "misdemeanor, manslaughter by the operation of a motor vehicle"; and that as these misdemeanors now constituted a violation of Maryland's manslaughter by automobile statute (Section 388 of Article 27), the common law offenses were no longer applicable, having been repealed by the legislature as a result of the enactment of that statute.

On June 28, 1967, Judge W. Albert Menchine in the Circuit Court for Baltimore County, granted appellee's motion to dismiss, stating in a brief opinion accompanying his order that under the common law, a showing of gross negligence was the main requirement for conviction of involuntary manslaughter; and that as none of the four counts alleged either an intention or purpose to harm in the operation of a motor vehicle, or the existence of gross negligence, such counts were not legally sufficient to charge a common law offense. The State has appealed from that order.[1]

The State contends that involuntary manslaughter at common law consisted of an unintentional killing while doing some unlawful act not amounting to a felony, nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself. More particularly, it differentiates the two classes of involuntary manslaughter by characterizing the first class as comprising all those cases wherein the defendant has caused the death of another as a direct and proximate result of doing an unlawful act not amounting to a felony, *i.e.,* a misdemeanor (misdemeanor-manslaughter). As to this category of involuntary manslaughter, the State urges that the

---

1. While ordinarily the State has no right of immediate appeal from an order dismissing less than all counts of an indictment (see *State v. Gregg,* 163 Md. 353), it appears that after the court's order, the State entered a *nolle prosequi* to the remaining counts of the indictment.

existence of negligence is not an element of the offense; that the doing of an unlawful act, which is *malum in se* or which if *malum prohibitum,* was in violation of a statute provided to prevent injury to the person, constitutes involuntary manslaughter irrespective of the existence of negligence. The State identifies the second distinct class of involuntary manslaughter as comprising those cases where the defendant, while doing a lawful act in a grossly negligent manner, kills.

It is the State's position that the common law misdemeanor-manslaughter rule is applicable in Maryland and has not been revised, amended or repealed by the manslaughter by automobile statute (Section 388), which it contends applies only to a case where the defendant is charged with an unintentional killing in the course of doing a lawful act in an unlawful manner, *i.e.,* driving a motor vehicle in a grossly negligent manner. It is upon this premise that the State maintains that the first four counts of the indictment properly charged the offense of common law manslaughter in that the appellee operated his vehicle in violation of the law in the four particulars set forth in counts one through four of the indictment; that the first three of these are *mala in se,* but even if *mala prohibita,* they were violations of statutes calculated to prevent injury to the person.

The appellee, on the other hand, urges that the common law crime of involuntary manslaughter where homicide was the unintentional result of an automobile accident has been repealed by Section 388, and that all cases involving the unintentional killing of a person by an automobile can only be prosecuted under the manslaughter by automobile statute; and that in such prosecutions the State carries the burden of proving gross negligence in order to obtain a conviction.

Manslaughter is a common law offense and a felony in Maryland; it may be voluntary or involuntary, depending upon the requisite intent, and since the crime is not defined by statute, it is afforded its common law meaning in this State. *Connor v. State,* 225 Md. 543; *Chase v. Jenifer,* 219 Md. 564. By Section 387 of Article 27 of the Maryland Code, manslaughter, whether voluntary or involuntary, is punishable by a term of imprisonment not exceeding ten years. The crime of manslaughter by automobile created by Section 388 is a

separate statutory misdemeanor, unknown to the common law, and is punishable under the statute by a designated fine and/or imprisonment in jail or the house of correction for a term not to exceed three years. See *Connor v. State, supra.*

Involuntary manslaughter at common law has been generally defined as the killing of another unintentionally and without malice (1) in doing some unlawful act not amounting to a felony,[2] or (2) in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty. See 1 *Warren on Homicide* (Perm. Ed. 1938), 420, 421; 26 Am. Jur. *Homicide,* Sec. 18, 44; 40 C.J.S. *Homicide,* Sec. 55, and cases therein cited. To this basic definition other authorities add the qualification, as to the first class of involuntary manslaughter, that the unlawful act be *malum in se,* and not merely *malum prohibitum,* and as to the second and third classes of the offense, that the negligence be criminally culpable, *i.e.,* that it be gross. Clark and Marshall, *Crimes* (Sixth Ed.), Sections 10.04, 10.12-10.14; *Perkins on Criminal Law,* pp. 34, 57-61; Wharton's *Criminal Law and Procedure,* (Anderson Ed.), Vol. 1, Sections 289-292, 296, and cases therein cited.

It is well settled in this State that where a charge of involuntary manslaughter is predicated on negligently doing some act lawful in itself, or by negligently failing to perform a legal duty (the second and third classes of involuntary manslaughter above delineated), the negligence necessary to support a conviction must be gross or criminal, *viz.,* such as manifests a wanton or reckless disregard of human life.[3] *Maryland v. Chapman,* 101 F. Supp. 335 (D. C. Md.); *Palmer v. State,* 223 Md. 341; *Craig v. State,* 220 Md. 590; *Chase v. Jenifer, supra; Neusbaum v. State,* 156 Md. 149. It is equally well settled that the Legislature, in enacting Section 388, making it a misdemeanor to cause the death of another as a result of operating an automobile "in a grossly negligent manner," intended to

---

2. In which event it may constitute murder.

3. There must, of course, be a causal connection between such gross negligence and death to support a conviction, although it is not essential that the ultimate harm which resulted was foreseen or intended. *Palmer v. State, supra; Craig v. State, supra.*

adopt this same standard of gross negligence (a wanton or reckless disregard of human life) as the minimum requirement to support a conviction for this statutory offense. *Connor v. State, supra; Lilly v. State,* 212 Md. 436; *Thomas v. State,* 206 Md. 49; *Duren v. State,* 203 Md. 584; *Hughes v. State,* 198 Md. 424; *Montague v. State,* 3 Md. App. 66.

It is likewise clear that the Maryland cases have generally recognized that a charge of involuntary manslaughter at common law could in some circumstances at least be based on the doing of an unlawful act. In *Neusbaum v. State, supra,* the court, in defining a felonious homicide, characterized the crime so as to include those cases where one takes the life of another unintentionally and without excuse "while needlessly doing anything in its nature dangerous to life, or who causes death by neglecting a duty imposed either by law or by contract, or in the course of committing a crime or even a civil wrong." 156 Md. at page 155. To like effect, the court in *Insurance Company v. Prostic,* 169 Md. 535, in discussing a felonious homicide, held at page 539 that "when the person acting has no intention to injure anybody, but death is the result of unlawful action endangering life, there is manslaughter, at least."

*Neusbaum* and *Prostic* seemingly share a common thread— that where a prosecution for involuntary manslaughter is based on the commission of an unlawful act causing death, the act must itself be dangerous to life. As the *Prostic* court observed, if the person causing the death of another "intends to do an unlawful and wrongful act, which is punishable because it is wrong in itself, and in doing it he inflicts an unforeseen injury, he is criminally liable for that injury" [since] "[t]here are many acts so heedless and incautious as necessarily to be deemed unlawful and wanton, though there may not be any express intent to do mischief, and the party committing them causing death by such conduct will be guilty of manslaughter." 169 Md. at page 539.

It is against this background that we examine whether the first four counts of the indictment returned against the appellee —which are expressly bottomed upon the applicability of the so called misdemeanor-manslaughter rule (an unintended homi-

cide committed in the course of doing an unlawful act, *i.e.,* committing a misdemeanor)—properly charge an existing offense in this State, when considered in light of the provisions of Section 388 and of the legislative intention in enacting that statute.

We note at the outset that the manner of operating a motor vehicle is commonly regulated in detail by statute or ordinance and that it is an unlawful act in itself to drive a vehicle in violation of such laws. It is not, however, a generally accepted rule that the fact alone that the operator of an automobile was violating the motor vehicle laws when his car struck and killed a person renders him, without more, guilty of involuntary manslaughter at common law. The authorities are divided on the question, some holding, as in *State v. Hupf,* 101 A. 2d 355 (Del.), that where a person violates a traffic statute which proximately results in the death of another, he is guilty of involuntary manslaughter, without regard to whether the violation was *malum prohibitum* or *malum in se,* and irrespective of whether there was any proof that the motorist's conduct evidenced a wanton or reckless disregard for the lives and safety of others. Other authorities support the view as articulated in *State v. Strobel,* 304 P. 2d 606 (Mont.), that such violations of law proximately resulting in the death of another, whether the violation was *malum in se,* or *malum prohibitum,* do not constitute involuntary manslaughter, unless the element of criminal negligence is also present. Still other authorities distinguish between unlawful acts *mala prohibita* and *mala in se,* and conclude, in effect, that where the violation was merely *malum prohibitum,* no criminal homicide results, unless the violation was dangerous to life and constituted a reckless disregard for the safety of others; but that where the unlawful act underlying death was *malum in se* the violator would be guilty of involuntary manslaughter, even though the unlawful act was not calculated to cause death. The cases are collected at 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* Sec. 279, and in Wharton's *Criminal Law and Procedure* (Anderson Ed.), Vol. 3, Sec. 973.

The only case in Maryland involving a charge of common law involuntary manslaughter growing out of the operation of

a motor vehicle is *Neusbaum v. State, supra.* In that case, decided in 1928, thirteen years before the enactment in 1941 of what is now Section 388, the indictment specified that the defendant "feloniously and *negligently* did kill and slay" the deceased. The court there held that as the offense was based on the theory that the decedent had been killed as a result of the defendant's negligence in operating his vehicle, it was necessary to prove that such negligence was gross or criminal, since no other degree would be felonious. *Neusbaum* did not concern itself with that species of involuntary manslaughter upon which the four counts of the indictment now in question are expressly based, although, as heretofore indicated, the dictum in that case is that, where a prosecution for involuntary manslaughter is predicated on the commission of an unlawful act causing death, the act must itself be dangerous to life. This dictum would appear to be consistent with the holding in *Worthington v. State,* 92 Md. 222, a case decided in 1901, which concluded, in effect, that since an unlawful attempt to procure an abortion (a misdemeanor) is an act dangerous to life (or *malum in se*), a death resulting from such an attempt will not be less than manslaughter.

While these cases might be construed to place Maryland among those authorities which hold that an unintentional killing committed in the course of doing some non-felonious unlawful act dangerous to life or *malum in se,* constitutes involuntary manslaughter at common law, irrespective of the existence of criminal negligence, we are persuaded that if such was ever the law of this State, it no longer has any application to those cases where the homicide results unintentionally from the operation of a motor vehicle—it being our view that such cases can only be prosecuted under Section 388.

There is no legislative history to which we may turn to ascertain the exact reach of Section 388, or of the effect of that statute upon the common law felony of involuntary manslaughter. We think it plain, however, that when Section 388 was enacted by Chapter 414 of the Acts of 1941, there then existed much confusion and little enlightenment among the authorities with respect to which of the several theories underlying application of the misdemeanor-manslaughter rule was

the correct one. Quite clearly, where such unintentional homicides proximately resulted from driving an automobile in violation of laws designed to regulate and control the operation of motor vehicles in the interest of public safety there was an overlapping and blurring between and among the different theories of criminal responsibility, since in most instances such a violation constituted not only an unlawful act, but one dangerous to the lives and safety of others and such as manifested a wanton and reckless disregard of human life. We believe that the Legislature in enacting Section 388 to punish persons who cause the death of another "as the result of the driving, operation or control of an automobile * * * in a grossly negligent manner," intended to treat all unintended homicides thereby resulting in the same way, without regard to whether the homicide occurred in the course of doing a lawful or an unlawful act, or whether such act was *malum in se* or merely *malum prohibitum*. To otherwise conclude would be to attribute an intention to the Legislature to permit the prosecution of offenders either for the felony of common law manslaughter, with its ten-year penalty, or for the statutory misdemeanor of manslaughter by automobile, with its three-year penalty, even though, where the prosecution is based upon gross negligence, the proof necessary to justify a conviction in either case would be precisely the same (a wanton or reckless disregard of human life). A similarly incongruous result would follow from attributing an intention to the Legislature to permit a felony conviction and ten-year sentence upon simple proof that the accidental homicide occurred in the commission of an unlawful act (a misdemeanor), while requiring a greater degree of proof under the statute to support a conviction for a lesser grade of homicide, a misdemeanor punishable by a maximum of three years imprisonment.[4] In construing statutes, results that are

---

4. Under Section 388, violation of a statute enacted for the control of motor vehicles, by itself, is usually not sufficient to support a conviction. See *Abe v. State*, 230 Md. 439 (exceeding the speed limit), and *Lilly v. State, supra* (driving through a stop sign, excessive speed, and driving under the influence of alcohol). See also *Clay v. State*, 211 Md. 577, setting forth the test for determining when an individual may be deemed to be driving while under the influence of alcohol.

unreasonable or inconsistent with common sense should be avoided, whenever possible. See *Height v. State,* 225 Md. 251. We conclude, therefore, that in enacting Section 388, the Legislature intended to deal with an entire subject matter—unintended homicides resulting from the operation of a motor vehicle—and that the common law crime of involuntary manslaughter, when based on homicides so occurring, is in conflict with the statute and must yield to it to the extent of the inconsistency. See *Lutz v. State,* 167 Md. 12. We observe in this connection that in enacting Section 388, the Legislature expressly provided (Section 2 of Chapter 414 of the Acts of 1941) that "all acts inconsistent with the provisions of this Act are repealed to the extent of such inconsistency." While the crime of manslaughter is not defined by statute in Maryland, it is, as heretofore stated, recognized by Section 387 of Article 27 and provision made for its punishment. The rule is well settled that "where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished." 82 C.J.S. *Statutes,* Sec. 303. See also 50 Am. Jur. *Statutes,* Sec. 567.

In holding that the first four counts of the indictment must be dismissed, we are not unmindful of the rule that statutes in derogation of the common law must be strictly construed (*Gleaton v. State,* 235 Md. 271). Nor do we overlook the proposition that it is not to be presumed that the Legislature intended to make any innovation upon the common law further than that required (*Lutz v. State, supra*). And we have not failed to consider cases such as *State v. London,* 162 A. 2d 150 (Me.), and authorities therein cited, certain of which appear to hold, in circumstances not dissimilar to those presented by the instant case, that a negligent or reckless homicide statute punishing manslaughter by automobile does not repeal the crime of common law involuntary manslaughter when based on death occurring from a motor vehicle accident during the commission of an unlawful act. See also Clark and Marshall, *Crimes,* Sec. 10.13. The cardinal rule in the construction of statutes is, however to effectuate the real and actual intention

of the Legislature. In affirming the dismissal of the first four counts of the indictment, we believe we have accomplished this purpose.[5]

<em>Order affirmed.</em>

---

**5.** Section 388 does not, of course, abrogate the crime of manslaughter in those cases where the killing was accomplished by intentionally running over the victim in an automobile. *Connor v. State, supra; Allison v. State,* 203 Md. 1.