WILLIE JAMES WILSON, THE YOUNGER *v.*
STATE OF MARYLAND

[No. 5, September Term, 1975.]

*Decided September 9, 1975.*

The cause was submitted on briefs to MORTON, MENCHINE and MASON, JJ.

Submitted by *Michael S. Libowitz, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Bruce C. Spizler, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Clifton Gordy, Assistant State's Attorney for Baltimore City,* for appellee.

MENCHINE, J., delivered the opinion of the Court.

Willie James Wilson, Jr., (appellant) charged with the murder of one Brenda Gorham, and with the use of a handgun in a crime of violence, was convicted by a jury in the Criminal Court of Baltimore of manslaughter and the handgun offense. He was sentenced to concurrent terms of five years imprisonment.

On appeal Wilson contends that the charge of the trial court: (1) imposed upon him an erroneous burden of proof and (2) failed to instruct that conviction of the handgun offense could not occur if the jury found appellant guilty of involuntary manslaughter.

### The Court's Charge as to Burden of Proof

It is quite clear from evidence introduced both by the State and the defense that the evidence compelled the jury to consider the question whether death occurred while the appellant was performing a lawful act, and whether that lawful act was accompanied by criminal culpable negligence.

Evidence offered by the State included testimony by the police officer who conducted the initial investigation that appellant "stated that the young lady was on drugs and he tried to get the gun out of her hand, and it went off." The father of appellant, also called by the State, testified that he

had been awakened by his son, informed that Brenda had been shot and received the explanation "we were tussling over the gun, and the gun went off." An ambulance attendant, also offered by the State, testified, *inter alia,* that appellant, while accompanying the victim in an ambulance from the scene of the alleged offense to the hospital, had stated: " 'that doggone girl she should not have been messing around like that * * *.' He seemed very frustrated at the situation."

The mother of appellant, the only eyewitness, testifying for the defense, said that she saw Brenda pick up a pistol and saw her son try to get it out of her hand. She said that the hands of the appellant and the victim were upward at the time the shot was fired. The victim was 5 feet 1 inch tall. A photo of the victim and appellant taken sometime prior to the incident showed that appellant was very much taller. The medical examiner testified that, "the bullet entered * * * slightly in front of the ear and high on top of the scalp * * * and passed downward to approximately a forty-five degree angle to the floor. * * * this is a close-range shot. Certainly, in this case, estimated to be eighteen inches or less in terms of the distance from the top of the head to the end of the gun at the time it was discharged." The testimony of the appellant also clearly raised the issue of excusable homicide by misadventure or accident.

The court's advisory charge to the jury had included an instruction grounded upon self-defense and correctly had pointed out that this affirmative defense imposed upon the accused the burden of proof. *Davis v. State,* 237 Md. 97, 205 A. 2d 254, cert. den. 86 S. Ct. 402, 382 U. S. 945, 15 L.Ed.2d 354.

The trial judge then went on to give the following advisory instruction:

"Now, the other defense or combination of the defenses of the defendant is, that the shooting was accidental, that he did not intend to fire the weapon, if he did fire the weapon, or that the firing of the gun was not caused by gross negligence or wantonness on his part, which means, an utter

disregard for human life and that, therefore, he is not guilty of the commission of any crime.

"If the weapon was accidentally discharged and that was not caused by gross negligence or wantonness on the part of the defendant, then the defendant would not be guilty of any crime if you so find that to be.

"On the other hand, if it was unintentionally discharged, but you, the jury, found that it was handled with such gross negligence on the defendant's part under the existing circumstances or wantonly by the defendant which means, without regard to human life, then you could find the defendant guilty of manslaughter."

Had the charge of the court been concluded at that point, we apparently would have no dispute because the appellant has not questioned the propriety of that portion of the court's charge. He does, however, vigorously attack the court's additional instruction, namely:

"Again, the burden of proving accidental firing without gross negligence or wantonness is upon the defendant but that burden is met by only preponderance of the evidence and not by evidence beyond a reasonable doubt."

The State argues that there was no objection below so that the issue is not before us. Rule 756 f. The appellant argues alternatively (a) that objection was made below or (b) that we should consider the issue as plain error under Rule 756 g. The record shows that defense counsel noted the following objection to the charge:

"What I am most concerned with here is that the Court talks about proof many times, but the Court never mentioned that a defendant can be acquitted on the lack of State's evidence. * * * And that the defendant has a right to rely upon the failure of the prosecution to establish such proof and individual elements."

We think that this objection, although imprecise, was adequate to raise the issue below. In any event, we are persuaded that the instruction, if erroneous, was plain error material to the rights of the accused and properly should be considered by us under Rule 756 g. *Brown v. State*, 14 Md. App. 415, 287 A. 2d 62.

It is uniformly recognized that common law manslaughter is divided into two classifications, namely, voluntary manslaughter and involuntary manslaughter. In turn, involuntary manslaughter falls within distinct classifications. Clark and Marshall, *Crimes*, (7th Ed., 1967) suggests the following divisions:

"§ 10.12 Involuntary—Unintentional Homicides During:

1. Commission of a criminal act not amounting to a felony, nor naturally tending to cause death or grievous bodily harm.

2. Omission to perform a legal duty, under circumstances evidencing criminal-culpable negligence.

3. Performing lawful act with criminal-culpable negligence."

That division is recognized in Maryland. *State v. Gibson*, 4 Md. App. 236, 242, 242 A. 2d 575, 578-79, affirmed and opinion adopted, 254 Md. 399, 254 A. 2d 691.

Equally well settled is the rule of law that the offense may be excusable (a) because of misadventure or *per infortunium* or (b) in self-defense or *se defendendo*. Clark and Marshall, *supra*, at 470-71. The distinction between excusable homicide by misadventure or *per infortunium* (accident) on the one hand and excusable homicide in self-defense or *se defendendo* on the other, early was recognized in the common law. 4 Blackstone Commentaries, 182.

In illustration of accident or misadventure, Clark and Marshall, *supra*, say at 476:

"For instance, accused is entitled to be acquitted where he was lawfully acting in self-defense and

his assailant's death resulted from misadventure or accident, such as the accidental discharge of a weapon in the struggle over its possession. If a man kills another in doing a *lawful* act in a lawful manner, that is, without negligence, the homicide is excusable, 'for the act is lawful, and the effect is merely accidental.' "

Dictum in the early case of *Rex v. Woodburne & Coke,* (1722, England) 16 How. St. Tr. 53, 80, illustrates vividly the marked legal distinction between a homicide occurring in the course of lawful as distinguished from unlawful actions:

"* * * if a man shoots at a wild fowl, wherein no man hath any property, and by such shooting happens unawares to kill a man; this homicide is not felony, but only a misadventure or chance-medley, because it was an accident that happened in the doing of a lawful act: but if this man had shot at a tame fowl, wherein another had property, but not with intention to steal it, and by such shooting had accidentally killed a man, he would then have been guilty of manslaughter, because done in prosecution of an unlawful action, viz. committing a trespass on another's property; * * *"

In 41 C.J.S. *Homicide,* § 387, it is said:

"Where the evidence warrants it, the court should fully, correctly, and explicitly charge as to the law in relation to the defense of accidental killing as applied to the facts of the case, * * *."

The issue as to the burden of proof in involuntary manslaughter cases wherein the evidence warrants consideration of excusable homicide by misadventure appears not to have been directly considered in this State. The general rule is thus stated in 40 Am.Jur.2d *Homicide:*

"§ 253. Accident or misadventure.

A defense of accidental killing to a prosecution

for homicide denies that the killing was intentional, but does not throw upon or shift to the accused the burden of proving that the homicide occurred by accident or misadventure. It is the general rule that where the defense of accidental killing is set up, the burden rests upon the prosecution to show that the killing was wilful and intentional, or that it was due to a reckless disregard of the safety of others, * * *."

Wharton on *Homicide*, (3d Ed., 1907) stresses the distinction between self-defense and accidental killing, saying at 354:

"Self-defense is an affirmative, positive, intentional act, and does not include an accidental killing; there can be no such thing as accidental self-defense."

adding at 568:

"A person charged with homicide pleading misadventure or accidental killing is not required to establish his plea by a preponderance of the evidence; the state must overcome such plea beyond reasonable doubt."

A leading case on the issue is *State v. McDaniel*, 47 S. E. 384 (S. Ct., S. C., 1904) where the Court said at 388-89:

"The rule has been established in this state that, where self-defense is pleaded to an indictment, the defendant must establish it by the preponderance of the evidence, but at the same time the guilt of the accused must be made to appear beyond a reasonable doubt. State v. Welsh, 29 S. C. 4, 6 S. E. 894; State v. Bodie, 33 S. C. 132, 11 S. E. 624. Whether such a rule, as applied to self-defense, is sound or practically useful, we need not now inquire. If there is no distinction between self-defense and homicide by accident, when set up by plea and evidence, then, unquestionably, the circuit court charged the jury correctly, as he

charged in accordance with the law as laid down in repeated decisions concerning self-defense as an affirmative defense. *But we do not think that a defense that the homicide was accidental is in any sense an affirmative defense. It is distinguishable from self-defense as a plea, which admits an intentional killing, and sets up as justification a necessity to kill in order to save the accused from death or serious bodily harm, whereas a defense of homicide by accident denies that the killing was intentional.* In Commonwealth v. McKie, 1 Gray, 61, 61 Am. Dec. 410, the logical rule is thus stated: 'Where the defendant sets up no separate independent fact in answer to a criminal charge, but confines his defense to the original transaction charged as criminal, with its accompanying circumstances, the burden of proof does not change, but remains on the government to satisfy the jury that the act was unjustifiable and unlawful.' In the case of State v. Cross (W. Va.) 24 S. E. 996, the court held that the defense of accidental killing is a denial of the criminal intent, and throws upon the state the burden of proving such intent beyond a reasonable doubt, and the accused is not required to sustain such defense by a preponderance of testimony. It was error, therefore, to instruct the jury to disregard the plea of accidental homicide if the defendant failed to establish it by the preponderance of the evidence." (Emphasis added)

In *State v. Cross*, 24 S. E. 996 (S. Ct. of Appeals, W. Va., 1896), it was said at 997-98:

"The circuit court erroneously put the question of accidental killing in the same category with willful killing, where some matter such as self-defense or provocation is asserted by way of mitigation, excuse, or justification. In such cases the burden is on the accused to establish his defense by a preponderance of evidence. But the claim that the

killing was accidental goes to the very gist of the charge, and denies all criminal intent, and throws on the prosecution the burden of proving such intent beyond a reasonable doubt."

In *State v. Matheson*, 103 N. W. 137 (S. Ct., Iowa, 1905), in reversing because of an improper charge, the Court said at 140-41:

"It is to be borne in mind that the theory of the defense was that defendant was innocent of any wrongful intent, and that his revolver was accidentally discharged. This was not a defense by way of justification or excuse, but, if true, it completely negatived the commission of any crime. * * *, it seems to us the effect of this instruction was to practically say to the jury that, unless the defendant proved by a preponderance of the evidence that the shooting was accidental, they should presume guilt from the fact of the discharge of the pistol and the injury to Baker."

In *State v. Budge*, 137 A. 244 (S. Jud. Ct. of Maine, 1927), a conviction for manslaughter was reversed where the trial court's charge had inferentially cast the burden of proof upon the accused, the Court saying at 245-46:

"We think the exception must be sustained. Not only was the instruction erroneous, but was couched in language that under the circumstances of the case and in the light of other parts of the charge might well tend to mislead the jury as to the essential elements of the offense necessary to be proved by the state, and thereby the respondent was aggrieved. State v. Gallant, 124 Me. 135, 126 A. 576.

"The only inference the jury could have drawn from the instruction was that, if the respondent was engaged in an unlawful act at the time of the homicide, they must find him guilty. Not only was the respondent aggrieved in this respect, but the

instruction put upon him a burden which the law does not impose. To acquit of manslaughter on the ground of misadventure, a jury is not obliged to find as a fact that a respondent was not at the time of the homicide engaged in doing an unlawful act. If that was a controlling fact, no more is required than that the jury should have a reasonable doubt. The burden is not on a respondent to prove the homicide occurred by misadventure, but on the state to show it was either due to a reckless disregard of the safety of others, or that, if it resulted while in the performance of an unlawful act and involuntary, the unlawful act was malum in se, or, if malum prohibitum, that it was at least the proximate cause of the homicide."

Although we have been referred to no Maryland decision in which the specific issue of burden of proof has been discussed, the necessary implication of language used in *State v. Gibson, supra,* is that it rests upon the State. In *Gibson,* Chief Judge Hammond, for the Court of Appeals, in the course of approving "the careful and thorough opinion of Chief Judge Murphy of the Court, in *State v. Gibson,* 4 Md. App. 236," had commented (at 400 of 254 Md.):

"* * * The State's attorney for Baltimore County *seemingly feared he could not prove gross negligence* for in the first four counts he sought to charge involuntary manslaughter by automobile solely by reason of a violation of law without alleging gross negligence." (Emphasis added)

Chief Judge Murphy, for this Court, had said in *State v. Gibson, supra,* (at 242 of Md. App.):

"It is well settled in this State that where a charge of involuntary manslaughter is predicated on negligently doing some act lawful in itself, or by negligently failing to perform a legal duty (the second and third classes of involuntary manslaughter above delineated), *the negligence*

*necessary to support a conviction must be gross or criminal, viz.,* such as manifests a wanton or reckless disregard of human life." (Emphasis added)

We hold, accordingly, that where, as here, there is evidence tending to show that a killing was unintentional, occasioned in the course of a lawful act, the accused is entitled to an instruction that the burden rests upon the State to prove beyond a reasonable doubt that such lawful act was grossly negligent. The charge of the trial court, placing that burden of proof upon the accused, was reversible error.

### *The Charge as to the Handgun*

No request was made to the trial court for an instruction that involuntary manslaughter would not legally suffice as a base for conviction of a handgun offense. Thus, the alleged error was of omission and would not qualify as "plain error" under Rule 756 g. The issue is not before us. *Brown v. State, supra.*

The record discloses no other handgun use by appellant than in connection with the alleged homicide offense. In the light of the circumstance that we are compelled to reverse the conviction for that alleged crime and considering that such alleged homicide solely was the basis for the handgun conviction, we must reverse also as to the latter. We shall, accordingly, address ourselves to the question for the guidance of the lower court. Rule 1085. Ford v. State, 274 Md. 546, inapplicable in these circumstances.

The appellant was charged under Article 27, § 36B (d) that reads as follows:

"(d) *Unlawful use of handgun in commission of crime.* — Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or

misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years.

The subtitle "Pistols" of Article 27 of which § 441 forms a part, defines "Crime of Violence" and excludes involuntary manslaughter from its terms.[1] That section, however, in specific terms is restricted to the particular subtitle. That and other sections of the subtitle relate (with two minor exceptions [2]) to the sale or transfer of pistols and revolvers.

Section 36B (d), on the other hand, is intended to control the use of handguns. It is significant that its passage postdates § 441 and contains disjunctively a prohibition against use of a handgun "in the commission of any felony" as well as in "a crime of violence." Involuntary manslaughter is a felony. *Chase v. Jenifer*, 219 Md. 564, 569, 150 A. 2d 251, 254.

It would have been proper to deny the requested instruction had the same been sought.

Because it is necessary to reverse and remand for a new trial, a third issue raised by appellant is not reached.

> *Judgments reversed.*
> *Case remanded for new trial.*

---

1. The section in appropriate part, reads as follows:

"(a) As used in this subtitle—
(e) The term *'crime of violence'* means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

2. Section 445 prohibits possession by "any person who has been convicted of a crime of violence, * * * who is a fugitive from justice or a habitual drunkard, or addicted to or an habitual user of narcotics, barbituates or amphetamines, * * *."

Section 446 prohibits possession of "any stolen pistol or revolver, knowing or having reasonable cause to believe the same to have been stolen."