REPORTED

*IN THE COURT OF SPECIAL APPEALS*

*OF MARYLAND*

No. 2719

September Term, 2014

JONATHAN EUGENE BOWERS

v.

STATE OF MARYLAND

Wright,
Kehoe,
Nazarian,

JJ.

Opinion by Wright, J.

Filed: March 30, 2016

Following a guilty plea in the Circuit Court for Somerset County on March 13, 2013, appellant, Jonathan Eugene Bowers, was sentenced to 10 years' incarceration for one count of involuntary manslaughter.[1]  On December 10, 2014, Bowers filed a motion to correct an illegal sentence pursuant to Md. Rule 4-345 arguing that because the manslaughter sentencing statute, Md. Code (2002, 2012, Repl. Vol.), Criminal Law Article ("CR") § 2-207, is ambiguous, he is subject to the rule of lenity which requires that CR § 2-207 be read in his favor.  In this case, Bowers asserts that CR § 2-207 should be read as imposing two separate maximum sentences for voluntary and involuntary manslaughter; since he is convicted of involuntary manslaughter, he argues he should be subject to a maximum of 2 years in a local facility and, therefore, his 10-year sentence is illegal.  Bowers's motion was denied by the circuit court on January 20, 2015.  This appeal follows.

On appeal, Bowers presents the following question for our review: [2]

Did the circuit court properly deny Bowers's motion to correct an illegal sentence?

---

[1] Bowers was also sentenced to 3 years' consecutive incarceration for one count of conspiracy to manufacture a controlled dangerous substance, but that conviction is not part of this appeal.

[2] Bowers framed the question as follows:

Did the [c]ircuit [c]ourt err as a matter of law by denying Bowers's [m]otion when there is no binding judicial precedent holding the maximum sentence for involuntary manslaughter is ten years, Crim. Law § 2-207 is ambiguous, and Maryland's [l]egislature has failed to remedy the ambiguity in the law?

1

After a careful consideration of Maryland criminal law cases, authority, and legislative history, we hold that Bowers's 10-year sentence for involuntary manslaughter is not illegal.

## BACKGROUND

On October 27, 2012, at approximately 3:52 a.m., officers from the Somerset County Sheriff's Department responded to a report of an unconscious individual. When they arrived, the officers saw Bowers seated on the side of the road with his hands in the air. The unconscious individual was Bowers's father, Jonathan David Bowers. The senior Bowers was lying motionless and bleeding from his face.

When the officers returned to Bowers, he had his hands in the air, and said "he and his father [] were arguing and they had gotten into a fight and it happened real fast." Witnesses on the scene reported that Bowers and his father were seen arguing earlier in the evening, and that later on, during the altercation, Bowers repeatedly kicked his father, uttering "in a distressed, emotional state that he hoped [his father] was dead." Bowers was escorted to the officers' patrol unit in handcuffs. Approximately an hour later, Bowers's father was pronounced dead from "head and neck injuries as a result of multiple blunt force impact."

Bowers is a former United States Marine and has completed two combat tours in Iraq and Afghanistan. Bowers suffers from post-traumatic stress disorder ("PTSD")[3] as a

---

[3] PTSD is a mental health condition that can develop in "people who have seen or lived through a shocking, scary, or dangerous event" and who fail to recover after the trauma. The National Institute of Mental Health, *Post-Traumatic Stress Disorder*, http://www.nimh.nih.gov/health/topics/post-traumatic-stress-disorder-ptsd/index.shtml

result of the numerous traumatic events his experienced in combat.  He contends that at the time he killed his father, he "was in a dissociated rage state for the period following the initial blows . . . [and] he was not consciously aware of his actions" as a result of the PTSD.

Bowers was originally indicted for first-degree murder and a series of lesser offenses.  In exchange for the non-prosecution of the remaining charges, Bowers pleaded guilty to one count of involuntary manslaughter.  Bowers received a 10-year sentence to be served in the custody of the Commissioner of Corrections.  He filed this timely appeal arguing that the imposition of a 10-year sentence for involuntary manslaughter is illegal.

## DISCUSSION

In Maryland, manslaughter remains a common law crime with a prescribed statutory penalty.  *State v. Gibson*, 4 Md. App. 236, 241-44 (1968), *aff'd*, 254 Md. 399 (1969).  In other words, the elements for the unlawful act of manslaughter have not been defined by the legislature but remain in its common law form.[4]  *Moore v. State*, 194 Md.

---

(last accessed Feb. 16, 2016).  Those with PTSD may continue to feel stress and fear even when they are not in any danger.  *Id.*  Individuals diagnosed with PTSD experience symptoms such as "re-experiencing," which includes flashbacks of the trauma and frightening thoughts, and "arousal and reactivity," which includes being easily startled, angry outburst, and feeling "on edge."  *Id.*

[4] Involuntary manslaughter is a common law felony defined as an unintentional killing done without malice.  *State v. Pagotto*, 361 Md. 528, 548 (2000).  The elements of involuntary manslaughter have been set forth in the Maryland Criminal Pattern Jury Instructions ("MPJI-Cr"), as follows:

App. 327, 370 (2010); *rev'd on other grounds*, 422 Md. 516 (2011).  The statutorily

prescribed penalty for manslaughter is found in CR § 2-207 and provides, in pertinent

part:

> *Penalty*
>
> (a) A person who commits manslaughter is guilty of a felony and on conviction is subject to:
>
> (1) imprisonment not exceeding 10 years; or
>
> (2) imprisonment in a local correctional facility not exceeding 2 years or a fine not exceeding $500 or both.

---

> INVOLUNTARY MANSLAUGHTER—UNLAWFUL ACT
>
> The defendant is charged with the crime of involuntary manslaughter. In order to convict the defendant of involuntary manslaughter, the State must prove:
>
> (1) that [[the defendant] [another participating in the crime with the defendant]] [[committed] [attempted to commit]] a (unlawful act(s));
>
> (2) that [the defendant] [another participating in the crime] killed (name); and
>
> (3) that the act resulting in the death of (name) occurred during the [commission] [attempted commission] [escape from the immediate scene] of the (unlawful act(s)).

MPJI-Cr 4:17.9B (brackets and parenthesis in original).

Voluntary manslaughter, on the other hand, is defined as "an *intentional* homicide, done in a sudden heat of passion, caused by adequate provocation, before there has been a reasonable opportunity for the passion to cool." *Cox v. State,* 311 Md. 326, 331 (1988) (citations omitted) (emphasis in original).

4

Bowers avers that the maximum penalty he should have received under the statute should have been 2 years and, therefore, his 10-year sentence for involuntary manslaughter is illegal. He argues that because the manslaughter statute provides what he considers to be two possible maximum penalties, the language of the manslaughter statute is inherently ambiguous. As a result of this ambiguity, Bowers argues that he is entitled to the application of the rule of lenity.[5] He urges us to adopt a construction of the statute that places the 10-year maximum penalty provision on a voluntary manslaughter conviction and the 2-year maximum penalty on an involuntary manslaughter conviction.

### I.      Bowers did not waive his illegal sentence claim by failing to object or because he entered into a plea agreement.

In response to Bowers's appeal, the State first argues that Bowers "waived his illegal sentence claim by consenting to the terms of the plea agreement with the State." His knowing and voluntary plea agreement for involuntary manslaughter, the State explains, required that he expressly acknowledge his understanding that "the maximum penalty for involuntary manslaughter is 10 years in jail." At sentencing, the State continues, Bowers not only failed to object to the legality of his sentencing, but he requested a sentence of up to 5 years' imprisonment, which, while being within the

_____

[5] The rule of lenity is a judicial doctrine that guides statutory construction, requiring that when construing an ambiguous criminal statute, a court should resolve the ambiguity in favor of the defendant. *Moore v. State*, 163 Md. App. 305, 320 (2005). The *caritas* awarded by the rule of lenity "is particularly appropriate where legislative history of a statute or the relationship between two statutory provisions is not clear." *Id.* While "the rule of lenity does not shed light on legislative intent[,] . . . [it] provides a mechanism for resolving ambiguity when legislative intent cannot be determined to any degree of certainty." *Gardner v. State*, 420 Md. 1, 17 (2011) (citations omitted).

5

sentencing guidelines, exceeds what Bowers now argues to be the "maximum" 2-year sentence for involuntary manslaughter. The State relies on *Chaney v. State*, 397 Md. 460 (2007), for the proposition that a "sentence may not be attacked belatedly and collaterally through a motion under [Md.] Rule 4-345(a), and . . . the defendant is not excused from having to raise a timely objection in the trial court."

We disagree with the State and do not find that Bowers waived his appeal of his sentence. Md. Rule 4-345(a) permits the court to "correct an illegal sentence at any time." Thus, an appellate court "may correct an illegal sentence on appeal even if no objection was made in the trial court," *Leopold v. State*, 216 Md. App. 586, 609 (2014) (citations omitted), because "a defendant who fails to object to the imposition of an illegal sentence does not waive forever his right to challenge that sentence." *Walczak v. State*, 302 Md. 422, 427 (1985) (citing *Coles v. State*, 290 Md. 296, 303 (1981)). Further, contrary to the State's assertion, "a guilty plea would not alter the illegality of the sentence imposed." *Stevenson v. State*, 180 Md. App. 440, 447 (2008) (citations omitted). The State's reliance on *Chaney* is misguided because the *Chaney* Court distinguished between deficient sentences and illegal sentences, limiting illegal sentences "to those situations in which the illegality inheres in the sentence itself." *Chaney*, 397 Md. at 466. The Court held that deficient sentences, not illegal sentences, "may not be attacked belatedly and collaterally through a motion under [Md.] Rule 4-345(a)." *Id.* In the instant matter, Bowers, by questioning the interpretation of the statute as a whole, is challenging his sentence as one whose "illegality inheres in the sentence itself," *id.*, and thus, he is well within his rights to challenge it on appeal.

**II.     Bowers's 10-year sentence for involuntary manslaughter is not illegal.**

In order for Bowers to receive the benefit of the rule of lenity, the Maryland manslaughter statute must be considered ambiguous. *See, e.g., Melton v. State*, 379 Md. 471, 488 (2004) (noting that the rule of lenity applies to "ambiguous units of prosecution and penalty provisions in criminal statutes"). If the language of the statute is clear and unambiguous, the analysis of a statute is over. *People's Ins. Counsel Div. v. Allstate Ins. Co.*, 408 Md. 336, 351 (2009). A statute is ambiguous if it is reasonably susceptible to more than one meaning: if it is intrinsically unclear or if its application in a particular circumstance is uncertain. *Webster v. State,* 359 Md. 465, 480-81 (2000). While the rule of lenity permits an ambiguity in a criminal statute to be construed against the State and in favor of the defendant, *id.*, the rule of lenity cannot be used to "create an ambiguity where none exists." *Jones v. State,* 336 Md. 255, 261 (1994) (citations omitted). Only if the statutory language is ambiguous is this Court required to look "beyond the statute's plain language in discerning the legislative intent." *Melton*, 379 Md. at 477 (citing *Comptroller of the Treasury v. Clyde's of Chevy Chase, Inc.,* 377 Md. 471, 483 (2003)).

Bowers argues that the manslaughter statute is ambiguous "because the words of the statute are susceptible to more than one interpretation." *Webster,* 359 Md. at 480. He posits three possible interpretations of the manslaughter statute: (1) the interpretation of the circuit court judge who heard Bowers's case and sentenced him to 10 years, that there are two possible maximum sentences; (2) that the maximum 2-year sentence is "incorporated" into the provision authorizing a 10-year sentence, citing to advocates who

7

argue that the 2-year sentence is obsolete; and (3) that the General Assembly intended to impose different maximum sentences for voluntary and involuntary manslaughter. Bowers urges us to adopt the third option: that the intent of the General Assembly in passing the manslaughter statute was to assign different penalties to the two classes of the crime. He urges us to accept his interpretation, that "the intent of [CR] § 2-207 was to impose a maximum sentence for *involuntary* manslaughter of no more than two years and/or a fine of up to $500" (emphasis added), while the penalty for *voluntary* manslaughter was intended to be "imprisonment not exceeding 10 years[.]" CR § 2-207. For the reasons laid out below, we do not find Bowers's argument persuasive.

> i.      *The Maryland manslaughter statute is not ambiguous.*

In the order and memorandum opinion denying Bowers's motion to correct an illegal sentence, the circuit court found that Bowers's 10-year sentence was not illegal because the manslaughter statute is not ambiguous. The circuit court concluded:

> Defendant is mistaken. First and foremost, courts only resort to legislative materials for statutory interpretation after courts have determined that the plain language of the statute itself lends itself to at least two possible reasonable interpretations. *Webster v. State*, 359 Md. 465, 480 . . . (2000). The manslaughter statute provides two possible penalties for manslaughter: up to ten (10) years in a penitentiary or up to two (2) years in a local facility and $500 fine. Md. Code Ann., Crim. Law § 2-207 (a). There is nothing on the face of this statute that lends itself to two possible interpretations. The meaning is clear. *There are two possible penalties: 10 years in prison or 2 years in jail.* The meaning of the statute itself is objectively clear, even if one finds the rationale, or perhaps lack thereof, behind the statute personally vexing.

(Emphasis added).  We agree with the circuit court's final decision but need to take the opportunity to answer some of the questions the circuit court judge found frustrating in deciding the issue presented in this appeal.

Bowers views the statute as providing two different sentences for manslaughter that are at odds with each other.  But actually, a straightforward reading of the statute shows that it merely provides sentencing *options* that give a sentencing court broad discretion as to whether defendant should serve the sentence in the Department of Corrections or in a local facility and for how long.  The statute makes no distinction between voluntary and involuntary manslaughter because the category of manslaughter has no bearing on the conviction or the ultimate sentence.

Legal authorities have consistently interpreted the manslaughter statute to carry one penalty for a conviction of either voluntary or involuntary manslaughter. Highlighting the relatively inconsequential distinction between voluntary and involuntary manslaughter, Judge Charles E. Moylan, of this Court, explains in his authoritative treatise on criminal homicide that the qualifiers "voluntary" and "involuntary" are merely descriptive terms.  Charles E. Moylan, Jr., *Criminal Homicide Law* § 8.5, at 155-56 (2002).  Because manslaughter is an implicit, lesser included offense within murder, an "indictment or criminal information on which [the defendant] stood trial will never even have mentioned the word manslaughter, let alone have made some more subtle distinction between voluntary manslaughter and involuntary manslaughter."[6] *Id*.  Even in

---

[6] Bowers was indicted for murder, but pled guilty to involuntary manslaughter, a lesser included offense.

9

the rare instances where manslaughter is alleged *per se,* the charging document "will not have made any distinction between voluntary manslaughter and involuntary manslaughter." *Id.* With regard to sentencing, Judge Moylan explains:

> If a defendant is convicted of manslaughter in Maryland, the maximum penalty provided by the Legislature is 10 years imprisonment and there is no distinction between whether the conviction was for a voluntary manslaughter or an involuntary one.

*Id.* Judge Moylan adds that the verdict in a manslaughter case will not, "nor should it," have made a distinction between voluntary and involuntary manslaughter. *Id.* Additionally, in his widely cited authority on Maryland criminal law, *Maryland Criminal Jury Instructions and Commentary*, Professor David E. Aaronson elucidates the manslaughter statute. He explains:

> *In terms of penalty, there is no distinction between voluntary and involuntary manslaughter.* Pursuant to [CR] § 2-207(a) (formerly art. 27, § 387), a person convicted of involuntary manslaughter or voluntary manslaughter is guilty of a felony and subject to a maximum of ten years imprisonment or imprisonment for two years and/or a maximum fine of $500.

1 David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary* § 5.54(A), at 902 (2015) (emphasis added).

Maryland courts have also affirmed the absence of any distinction in sentencing between voluntary and involuntary manslaughter. In *Connor v. State,* 225 Md. 543 (1961), the Court of Appeals reasoned that defendant Connor was not prejudiced by the circuit court's failure to differentiate between voluntary and involuntary manslaughter in the jury instruction because:

the penalty statute (§ 387)[7] makes no distinction between the two, the penalty for both grades of manslaughter is the same; nor is there any distinction in the usual form of the possible verdicts in a homicide case . . . between voluntary and involuntary manslaughter.

*Id.* at 558-59. After *Connor*, this Court considered *State v. Gibson*, 4 Md. App. 236, 241 (1968), *aff'd,* 254 Md. 399 (1969), in which it reiterated that "manslaughter, whether voluntary or involuntary, is punishable by a term of imprisonment not exceeding ten years." *See also, e.g., Forbes v. State*, 324 Md. 335, 340 (1991) ("Common law involuntary manslaughter carries a ten year maximum term of imprisonment and is a felony[.]").

Bowers contends, however, that the discussion in *Connor* concerning the penalty for manslaughter is dicta because the differences in punishment of voluntary and

---

[7] Md. Code, Art. 27, §§ 387 - 388C were repealed by Acts in 2002 and replaced with CR **§ 2-207. The Revisor's Notes for CR § 2-207 indicate that the "new language [is] derived without substantive change from former Art. 27, §§ 387 and 387A."** Some of the reasoning behind the changes includes:

[I]n subsection (a) of this section, the former phrase "in the discretion of the court" is deleted as implicit in setting a maximum penalty.

In subsection (a)(1) of this section, the former reference to a person being subject to imprisonment "in the penitentiary" is deleted for consistency within this article. Currently, inmates are sentenced to the custody of a unit such as the Division of Correction and then are placed in a particular facility. *See* [Md. Code (1999, 2008 Repl. Vol.), Correctional Services Article] § 9-103.

In subsection (a)(2) of this section, the defined term "local correctional facility" is substituted for the former term "jail" for consistency with the Correctional Services Article.

CR § 2-207.

11

involuntary manslaughter were not before the Court. It was dicta, Bowers argues, because the "*Connor* Court was not called upon to examine the construction of the manslaughter statute or opine whether there was a difference in the penalties for the two crimes." Because *Gibson* relied on *Connor* for the premise that both types on manslaughter are punishable by the same maximum sentence, Bowers maintains that *Gibson* should not be relied upon either.

"*Obiter dictum*" is typically a judicial comment "that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Black's Law Dictionary* 1240 (10th ed. 2014). However, the Court of Appeals has previously explained that "[w]hen a question of law is raised properly by the issues in a case and the Court supplies a deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum* although the final judgment in the case may be rooted in another point also raised by the record." *Schmidt v. Prince George's Hosp.*, 366 Md. 535, 551 (2001) (citations omitted). A matter is not dictum if "the question was directly involved in the issues of law . . . and the mind of the Court was directly drawn to, and distinctly expressed upon the subject." *Id.* at 552 (citing *Carstairs v. Cochran*, 95 Md. 488, 499 (1902). Upon our review of *Connor* and *Gibson*, we find that their discussion of the manslaughter penalty "reflects the application of this Court's judicial mind," *id.*, and we therefore disagree with Bowers's contention that those cases are not to be relied upon.

Our review of case law and legal authority on Maryland criminal law indicates a consistent and uniform understanding of the manslaughter sentencing statute. Accordingly, we disagree with Bowers that the manslaughter statute is capable of more than one interpretation and is, therefore, ambiguous. *Webster*, 359 Md. at 480. "Because the text of the statute is unambiguous, we need not look beyond the plain language of the statute to discern the intent of the Legislature." *Dixon v. Dep't of Pub. Safety & Corr. Servs.*, 175 Md. App. 384, 412 (2007) (citation omitted). However, even if we were to determine that the statute is ambiguous and would then necessarily review the legislative history of the manslaughter statute, the legislative history would support our position that a penalty under the statute is the same whether the conviction was for voluntary or involuntary manslaughter.

ii.     *The history of the Maryland manslaughter statute does not support Bowers's construction.*

Legislation is created with a particular objective or purpose. *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 513 (1987). In order to determine the purpose of the statute, we "may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material." *Id.* at 515.

a. *Early history of Maryland's manslaughter statute.*

English Common Law defined manslaughter generally as the unlawful killing of a person without the express or implied malice found in murder and split the crime into two

13

degrees: voluntary and involuntary. William Blackstone, *Commentaries on the Laws of England: Book 4: Public Wrongs, Homicide* (1770). While murder and many other crimes were punishable by death at common law, manslaughter was a crime that had the "benefit of clergy," a form of relief available to mitigate penalties if the accused repented. The punishment would then change from death to a lesser penalty, such as branding of the hand or forfeit of certain possessions, after which the accused would be released after being pardoned. Jeffrey K. Sawyer, *"Benefit of Clergy" in Maryland and Virginia*, 34 Am. J. Legal Hist. 50-54 (1990).

In 1809, Maryland enacted the first piece of legislation to systematically deal with the punishment of crimes (the "1809 Act" or the "Act"). John Brumbaugh, *A New Criminal Code for Maryland?*, 23 Md. L. Rev. 1, 2 (1963). The 1809 Act abolished the benefit of clergy[8] and replaced the flexibility in punishment it offered with sentencing range guidelines for judges, who could now sentence convicted individuals to workhouses and penitentiaries. 1809 Md. Laws, Chap. 138 §11, p. 468. The Act imposed a 10-year imprisonment as a maximum penalty for manslaughter. Md. Laws 1809, Chap. 138, §4(3), at 460. It read, in pertinent part: "Every person duly convicted of the crime of manslaughter, shall be sentenced to undergo a confinement in the said penitentiary for a

_____

[8] The first draft of the Maryland bill abolishing clergy makes very clear the connection between the new sentencing procedures and the abolition of clergy. "And be it enacted that all claims to dispensation from punishment by benefit of clergy, (in as much as they are compatible with the principle of strict justice) shall be and hereby are forever abolished." Sawyer, p. 68. Md. Code Ann., Art. 27, sec. 626 (1957, 1952 Repl. Vol.) currently restates the abolishing of clergy.

period not more than ten years, to be dealt with as herein after directed." *Id.* For most common law crimes, the 1809 Act declared the penalty for the particular crime without defining the crime itself. *Id.*; *see* Brumbaugh, 23 Md. L. Rev. at 3 ("The act is concerned primarily with the problem of punishment. In many cases the statute, when it deals with particular crimes, does nothing more than refer to a common law crime, without defining it, and announce a penalty."). Thus, the Act did not define manslaughter nor did it distinguish between voluntary or involuntary manslaughter. 1809 Md. Laws, Ch. 138, §4(3), at 460. In 1860, the manslaughter sentencing law was changed to read:

> Every person convicted of the crime of manslaughter, shall be sentenced to the penitentiary for not more than ten years nor less than eighteen months.

This version of the statue is noteworthy, as it provides for the court, both upper and lower bounds, affording ample discretion.

In the same year, Maryland Governor Thomas H. Hicks delivered a Message of the Governor to the Maryland General Assembly calling for shorter minimum sentences in State penitentiaries for certain crimes because of "unjust, indiscriminating severity" of previous minimum mandatory penalties. He stated, "I see no reason why there should not be shorter terms of service in the Penitentiary than two years or eighteen months, the minimum allowed by law; at least as long as we have no House of Correction for the offenses of lighter grade." *Message of the Governor to the Maryland General Assembly*, January Session 1860, Maryland Senate Journal of Documents, 1860, at 7-8. Shortly thereafter, however, Maryland realized the financial burden that shorter sentences in the

15

State penitentiary placed on the State budget. As a result, Governor Hicks called for the shorter sentences to be served in local jails rather than the State penitentiary:

> In my communication to the General Assembly at its session in January, 1860, I suggested the propriety of punishing crimes of lesser grade by confinement in the Penitentiary for a shorter period than the minimum then allowed by law. The experiment has been made, and has not met my expectation. The large number of criminals of this class sentenced to the Penitentiary has imposed upon its finances a bur[d]en which they cannot well endure . . . .

> Perhaps the ends of justice might be fully attained by punishing this class of offenders by short terms of imprisonment in the jails or almshouses, at hard labor. In this way they might, at least, under an efficient system, earn sufficient to pay the cost of maintaining them. If not, the expense could be lightly borne by the several counties and the city of Baltimore, and thus the resources of the Penitentiary be relieved from a heavy charge.

*Message of the Governor to the Maryland General Assembly*, January Session 1862, Maryland Senate Journal of Documents, 1863, at 6-7. Following the Message of the Governor, the Maryland legislature changed the manslaughter penalty in 1865 to language substantially similar to the current CR § 2-207. It read:

> Every person convicted of the crime of manslaughter shall be sentenced to the penitentiary for not more than ten years, or in the discretion of the court may be fined not more than five hundred dollars, or be imprisoned in jail for not more than two years, or be fined and imprisoned in jail.

Md. Laws 1864, Ch. 39. The courts, thus, had broad discretion in sentencing individuals convicted of manslaughter, a crime which itself varied in offensiveness based on the facts of individual cases, to imprisonment in either the State correctional facility or in the local jail.

We further note that the judicial discretion in sentencing seen in the manslaughter statute was similarly applied in other offenses at the time. A conviction for rogues and

vagabonds carried a sentence "to the penitentiary for not less than one month nor more than two years, or to imprisonment in jail, at the discretion of the court, for a like term." Md. Code of Public Gen. Laws (1862) Art. 72, § 187. Likewise, a conviction for treason carried a sentence to "penitentiary for a term not less than six months or more than two years, or to a fine not less than one hundred nor more than five hundred dollars, at the discretion of the court." Md. Code of Public Gen. Laws (1862) Art. 72, § 130; *see also* 1888 Md. Code of Public General Laws, Art. 27, § 156 (the penalty for larceny required a sentence to penitentiary "for not less than one year nor more than fifteen years," but where the value of the stolen goods was less than fifty dollars, the court had discretion to sentence to "imprisonment in jail or in the house of correction instead of the penitentiary"). Because this discretion existed for other crimes that are not necessarily split like manslaughter, it reinforces our view that there was no legislative intent to differentiate sentencing between voluntary and involuntary manslaughter.

> b. *Recent attempts by the Maryland General Assembly to change or modify the manslaughter statute.*

Bowers supports his notion that "the Legislature intended to impose different maximum sentences for voluntary and involuntary manslaughter" by referencing the Revisor's Note on CR § 2-207 in which the Criminal Law Article Review Committee ("the Committee") notes:

> the distinction between the general term of imprisonment available for a manslaughter conviction under subsection (a)(1) of this section and the term for imprisonment in a local correctional facility under subsection (a)(2) of this section is substantial, *perhaps* reflecting an implicit distinction between sentencing for voluntary and involuntary manslaughter. Generally, distinctions between imprisonment in a State or local

17

correctional facility have been eliminated in light of [Md. Code (1999, 2008 Repl. Vol.) Correctional Services ("CS")] §§ 9-104 and 9-105, which govern the place of custody based on the length of imprisonment imposed. The General Assembly may wish to clarify which situations warrant sentencing to a longer term in a State correctional facility or for a shorter term to a local correctional facility.

CR § 2-207 (emphasis added). We find this Note to be much less decisive than Bowers maintains. The language itself is inconclusive; the Committee indicates that the two sentencing maximums in local correctional facilities and in the Department of Corrections are "perhaps" indicative of a bifurcated manslaughter statute. The speculation by the Committee alone, particularly in light of the strong history to the contrary, is not enough to convince us that the Legislature intended to impose different penalties for voluntary and involuntary manslaughter. Moreover, as the circuit court points out, the Note appears to focus on the location of the incarceration (local facility or a penitentiary), rather than the length of the sentence.[9]

In 2009, in a bill endorsed by the Office of the Attorney General and the Office of the Public Defender, the General Assembly re-examined the manslaughter sentencing statute in an attempt to codify the common law offenses of voluntary manslaughter and involuntary manslaughter as separate offenses with separate penalty provisions. S.B.

---

[9] The Note highlights the discrepancy caused by CS § 9-105, which mandates that an individual's sentence to a local correctional facility must be "for a period of not more than 18 months[.]" Whether CS § 9-105 conflicts with CR § 2-207 is not at issue in this case because Bowers was sentenced to 10 years in a State correctional facility, and thus the 18-month maximum sentence in a local facility has no application to him.

18

105, 2009 Leg., 426th Sess. (Md. 2009). The General Assembly, however, declined to pass the bill, and the law remains unchanged.

In the 2009 bill hearing, one senator discussed the value of maintaining the court's discretion in sentencing. His perspective was that judges have discretion on the bench because they are the ones hearing the facts of each individual case. Accordingly, if a judge determines that an individual who committed a crime that falls under the involuntary manslaughter category is deserving of more than 2 years in a local correctional facility, then the judge is in the best position to make that determination.

As Bowers points out, there have been three unsuccessful attempts to change the manslaughter statute in the last 17 years.[10] He, nevertheless, argues that the Legislature's failure to change the statute is not "evidence of the Maryland General Assembly's tacit approval of a 10-year maximum sentence for involuntary manslaughter." We disagree. While we acknowledge that a bill may fail to pass through the General Assembly for many reasons, in some instances, "the failure to enact legislation is persuasive evidence of legislative intent." *Moore v. State*, 388 Md. 623, 641 (2005) (citing *Stearman v. State*

---

[10] Bowers also discusses two more bills that came before the General Assembly. First, a 1998 bill sought to specify different maximum punishments for voluntary and involuntary manslaughter. The bill proposed a conviction for "involuntary manslaughter . . . is subject to imprisonment for not more than 10 years or a fine of not more than $5,000 or both," and for "voluntary manslaughter . . . is subject to imprisonment for not more than 15 years or a fine of not more than $10,000 or both." Md. S.B. 347-1998(B)(1) & (2). The bill failed to pass both houses of the General Assembly.

Second, a 2012 bill was presented before the General Assembly to clarify CR § 2-207. The bill sought to bridge the difference between the 2-year maximum in a local facility provided by CR § 2-207 and the 18-month maximum provided in CS § 9-105. As we discussed previously, there is no need for us to reach this question today.

19

*Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 455 (2004) ("The refusal of the Legislature to act to change a [statute] . . . provides . . . support for the Court to exercise restraint and refuse to step in and make the change"); *State v. Bell*, 351 Md. 709, 723 (1998) ("Therefore, by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend" to adopt the result being urged) (additional citations omitted)). Where the General Assembly has time and again refused to enact bills that aim to change something specific, legislative inaction becomes "very significant." *Id.* (citations omitted). This Court will not adopt a position that the legislature has repeatedly rejected. *Id*. (citing *Halliday v. Sturm*, 368 Md. 186, 209 (2002) (additional citations omitted)). The legislative history of the manslaughter sentencing statute provides no evidence that the present statute distinguishes between voluntary and involuntary manslaughter.

## III.    Conclusion

Bowers will not be able to receive the benefit of the rule of lenity because the Maryland manslaughter statute is not ambiguous. The General Assembly has, throughout the years, been presented with several opportunities to change the language of the statute but has time and again kept the same words and phrasing. This indicates to us that the Legislature had no intent, in the current manifestation of CR § 2-207, to differentiate punishment between voluntary and involuntary manslaughter. As a result, Bowers's 10-

20

year sentence for involuntary manslaughter is within the limits of the statute and, therefore, not illegal.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**