*State of Maryland v. Kory J. Fabien*, No. 1061, September Term, 2021. Opinion by Woodward, J.

**CRIMINAL LAW – MANSLAUGHTER OF A VIABLE FETUS UNDER CRIMINAL LAW ARTICLE ("CR") § 2-103 – APPLICABLITY OF CR § 2-103 TO MANSLAUGHTER BY VEHICLE OR VESSEL UNDER CR § 2-209, BOTH IN GENERAL AND AS APPLIED – REQUIREMENT OF KNOWLEDGE FOR CONVICTION**

**CRIMINAL LAW – MOTION TO DISMISS – GRANT OF MOTION TO DISMISS SOME, BUT NOT ALL, OF THE CHARGES – STATE NOT REQUIRED TO ENTER *NOLLE PROSEQUI* OF REMAINING CHARGES WITHIN THIRTY DAYS OF ORDER GRANTING MOTION**

**Facts:** On January 12, 2019, appellee, Kory J. Fabien, drove a motor vehicle while under the influence of alcohol, crossed the double-yellow center lines, and caused a head-on collision with another vehicle. Haruko Berry, who was then thirty-three weeks pregnant, was the front seat passenger of the other vehicle. Although Ms. Berry survived the crash, she sustained serious injuries and her viable fetus was delivered stillborn during an emergency cesarean section at the hospital.

On December 19, 2019, appellee was indicted on four counts: (1) manslaughter by vehicle or vessel in violation of CR § 2-209(b); (2) homicide by motor vehicle or vessel while under the influence of alcohol per se in violation of CR § 2-503(a)(2); (3) criminally negligent manslaughter by vehicle or vessel in violation of CR § 2-210(b); and (4) life-threatening injury by motor vehicle or vessel while under the influence of alcohol per se in violation of CR § 3-211(c)(ii). In counts one, two, and three, the State charged appellee with the death of a viable fetus.

On February 9, 2021, appellee filed a motion to dismiss counts one, two, and three, to which the State filed an opposition. The trial court granted appellee's motion to dismiss in an Order dated May 28, 2021, and entered on June 1, 2021. On September 3, 2021, the State entered a *nolle prosequi* to the remaining count of the indictment and then filed a Notice of Appeal on September 9, 2021.

**Held:** Affirmed.

On appeal, appellee moved to dismiss the State's appeal on the grounds that, if the State intended to enter a *nolle prosequi* to the remaining count of the indictment, it had to do so within thirty days of the entering of the Order granting the motion to dismiss. According to appellee, because the State entered the *nolle prosequi* and noted an appeal more than thirty days after the entry of the Order granting the motion, the State's appeal was untimely. The Appellate Court of Maryland denied appellee's motion to dismiss, holding that there is no thirty-day time limit on the prosecutor's power to enter a *nolle*

*prosequi* when the trial court dismisses some, but not all, of the counts of an indictment. The Court pointed out that, under well-established case law, an appeal cannot be taken by the State from an order dismissing fewer than all counts of an indictment and that a final judgment occurs only when the remaining charges are resolved – here by entry of a *nolle prosequi*.

Next, as a preliminary matter, the Appellate Court noted that in order to convict a person of manslaughter of a viable fetus, CR § 2-103(c)(3) requires the State to prove that the defendant "wantonly or recklessly disregarded the likelihood that the person's actions would cause the death of or serious physical injury to the viable fetus." The State conceded, and the Court agreed, that CR § 2-103(c)(3) establishes a *mens rea* standard higher than the *mens rea* required for convictions under CR §§ 2-210 and 2-503. Consequently, the Court held that CR § 2-103 does not apply to a prosecution for a violation of CR §§ 2-210 and 2-503, and thus the trial court's dismissal of counts two and three must be affirmed. Accordingly, the only charge subject to the instant appeal was manslaughter by vehicle or vessel in violation of CR § 2-209.

The Appellate Court identified the issue raised in the appeal as whether CR § 2-103 applies to CR § 2-209, both generally and under the circumstances of this case. Because the issue is entirely of statutory construction, the Court engaged in an extensive analysis of both CR § 2-103 and CR § 2-209 under the established principles of statutory construction. As a result of that analysis, the Court held that CR § 2-103 applies to CR § 2-209 generally.

The Appellate Court then addressed whether CR § 2-103 applied to CR § 2-209 under the circumstances of the instant case. Specifically, the Court focused on appellee's argument that by choosing the phrase "to *the* viable fetus" instead of "to *a* viable fetus" in describing the object of the defendant's "wanton or reckless disregard" in CR § 2-103(c)(3), the General Assembly "intended the perpetrator to know of the potential harm to the viable fetus." The Court noted that the indefinite article "a, an" denotes a single but unspecified person or thing and is analogous to "human life" in the gross negligence standard of "wanton or reckless disregard for human life." By contrast, according to the Court, the definite article "the" denotes particular, specified persons or things. The Court held that by using the phrase "*the* viable fetus" in CR § 2-103(c)(3), the General Assembly intended to add the element of knowledge to the gross negligence *mens rea* in a prosecution for manslaughter of a viable fetus.

Because it was undisputed that appellee did not know or have reason to know that a pregnant woman was in the vehicle involved in the head-on collision caused by his grossly negligent operation of a vehicle, the Court concluded that the State could not prove an essential element of the charge under CR § 2-209. Accordingly, the Court affirmed the trial court's dismissal of the charge of manslaughter by vehicle or vessel in violation of CR § 2-209(b).

Circuit Court for Prince George's County
Case No. CT191310X

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1061

September Term, 2021
_____

STATE OF MARYLAND

v.

KORY J. FABIEN
_____

Beachley,
Tang,
Woodward, Patrick L.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Woodward, J.
_____

Filed: September 5, 2023

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

In the Circuit Court for Prince George's County, appellee, Kory J. Fabien, was charged on December 19, 2019 by criminal indictment with four counts arising out of a motor vehicle collision that caused the death of a viable fetus. Both parties agreed that under Md. Code Ann., Crim. Law ("CR") § 2-103, the State could prosecute an individual for murder or manslaughter of a viable fetus. The parties, however, disagreed on whether CR § 2-103 applied to the criminal charges brought against appellee.

On February 9, 2021, appellee filed a motion to dismiss counts one through three of the indictment. On February 22, 2021, the State responded by filing an opposition to appellee's motion. After a hearing held on May 21, 2021, the circuit court issued an Order dated May 28, 2021, and entered June 1, 2021, granting appellee's motion to dismiss.

On September 3, 2021, the State entered a *nolle prosequi* on the remaining count of the indictment—count four. Shortly thereafter, on September 9, 2021, the State filed a notice of appeal from the circuit court's decision granting appellee's motion to dismiss counts one through three.[1] On September 14, 2021, the court entered an Opinion and Order of Court "in supplement to the record made on May 21, 2021, and the Order issued on May 28, 2021."

On appeal, the State raises one question for our review:

---

[1] Md. Code Ann., Cts. & Jud. Proc. § 12-302(c)(2) permits the State to appeal "from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition." By entering a *nolle prosequi* to count four of the indictment against appellee, the State secured a final, appealable judgment within the meaning of the statute. *See State v. Gibson*, 4 Md. App. 236, 240 n.1 (1968), *aff'd*, 254 Md. 399 (1969), *cited with approval by Jones v. State*, 298 Md. 634, 637-38 (1984).

Did the circuit court err when it granted [appellee]'s motion to dismiss [c]ounts [o]ne, [t]wo, and [t]hree charging [appellee] with manslaughter of a viable fetus by operation of a motor vehicle?

For the reasons set forth herein, we shall affirm the judgment of the circuit court, but not on the grounds relied upon by that court.

## BACKGROUND

For the purpose of the instant appeal, the parties do not dispute the facts resulting in appellee's indictment. On January 12, 2019, appellee was driving a motor vehicle in the eastbound lane of Brown Road near the intersection of Brown Road and Nightside Drive in Prince George's County, Maryland. Appellee drove his vehicle across the double-yellow center lines into the westbound lane of Brown Road and caused a head-on collision with another motor vehicle driven by Kevin Berry II and occupied in the front passenger seat by his wife, Haruko Berry, who was at that time 33 weeks pregnant with the couple's second daughter. At the time of the collision, appellee had a blood alcohol concentration of 0.23 grams of alcohol per 100 milliliters of blood, and thus was driving under the influence of alcohol per se. Ms. Berry survived the crash but sustained serious injuries. Ms. Berry was transported to a hospital where she underwent an emergency cesarean section during which her viable fetus, Braylen Berry,[2] was delivered stillborn.

As previously stated, the State indicted appellee on December 19, 2019, on four counts: (1) manslaughter by vehicle or vessel in violation of CR § 2-209(b); (2) homicide by motor vehicle or vessel while under the influence of alcohol per se in violation of CR §

---

[2] Appellee does not dispute that Braylen Berry was a "viable fetus" prior to the collision on January 12, 2019.

2

2-503(a)(2); (3) criminally negligent manslaughter by vehicle or vessel in violation of CR § 2-210(b); and (4) life-threatening injury by motor vehicle or vessel while under the influence of alcohol per se in violation of CR § 3-211(c)(1)(ii). In counts one, two, and three, the State charged appellee with the death of a viable fetus.

On February 9, 2021, appellee filed a motion to dismiss counts one, two, and three, arguing that CR § 2-103, which permits the prosecution for murder or manslaughter of a viable fetus, was not intended to apply to prosecutions for manslaughter or homicide by motor vehicle based on the death of a viable fetus. Specifically, appellee contended that under CR § 2-103, the State was required to prove that the defendant knew of the existence of the viable fetus. Appellee pointed to subsection (c)(3) of CR § 2-103, wherein it states that the accused must have "wantonly or recklessly disregarded the likelihood that the person's actions would cause the death of or serious physical injury to the viable fetus." Appellee concluded that, because appellee did not know that the passenger in the car that he hit was pregnant, counts one through three must be dismissed.

On February 22, 2021, the State responded by filing an opposition to appellee's motion to dismiss, arguing that subsection (c)(3) of CR § 2-103 requires only a general intent, not a specific intent to harm the viable fetus. The State reasoned that, "[i]f the [L]egislature intended to require the [d]efendant to have knowledge of the viable fetus in order to be found guilty of manslaughter[,] it would have said so." The State also argued that by authorizing the prosecution of a viable fetus for murder or manslaughter, CR § 2-103 created a new class of victim that was included within the scope of the statutes cited in counts one through three. The State pointed out that, although CR § 2-103 sets forth

3

several exceptions to its applicability, there is no express exception for vehicular manslaughter of a viable fetus. The State concluded its opposition by reiterating that the Legislature created CR § 2-103 to allow for the prosecution of murder or manslaughter of a viable fetus, except for protecting "the mother's right to choose."

On April 23, 2021, appellee filed a supplemental motion to dismiss counts one, two, and three of the indictment. Appellee argued that CR § 2-103 is unconstitutionally vague as applied to this case. Specifically, appellee asserted that CR § 2-103 fails to provide fair notice of what is prohibited, because the statute's knowledge requirement is ambiguous, and thus is open to arbitrary enforcement.

Following a hearing held on May 21, 2021, the trial court granted appellee's motion to dismiss counts one, two, and three in an Order dated May 28, 2021, and entered June 1, 2021. In an Opinion and Order of Court entered on September 14, 2021, the trial court held that the language contained in CR §§ 2-209, 2-503, and 2-210 all require the death of "another," meaning a child, after the child's live birth, not a fetus. The court reasoned that, if the Legislature had intended to confer personhood or any rights on the fetus, it would have expressly done so.

After entering a *nolle prosequi* to count four on September 3, 2021, the State filed a Notice of Appeal on September 9, 2021. We shall supply additional facts as necessary to the resolution of the issue presented.

**MOTION TO DISMISS**

Appellee filed a motion to dismiss the State's appeal in this Court, arguing that the State failed to comply with Maryland Rule 8-202(a), which requires the filing of a notice

4

of appeal within thirty days after entry of the judgment or order from which the appeal is taken. Md. Rule 8-202(a). Appellee contends that "there were two ways that the State could have filed a valid notice of appeal." First, according to appellee, the State could have entered a *nolle prosequi* on the remaining fourth count of the indictment and noted the appeal within thirty days of the entry of the Order granting the motion to dismiss. Appellee argues that the State's second option was to proceed to a final judgment on count four and then note the appeal. Regarding the first option, appellee reasons that "[t]he State did not have unlimited time to decide whether to nol pros the fourth count because it only had thirty days to note an appeal from 'entry of the judgment or order.'" According to appellee, "[i]t contravenes Rule 8-202 to conclude that the State can delay and start the thirty-day clock when it nol prosses, which is not an 'entry of the judgment or order from which the appeal is taken.'" Because the State did not note an appeal until September 9, 2021, which was more than thirty days from the entry of the order granting the motion to dismiss counts one through three on June 1, 2021, appellee concludes that the appeal was untimely and must be dismissed.

In response, the State argues that the notice of appeal was timely filed under Md. Rule 8-202(a). Specifically, the State claims that it has prosecutorial discretion to decide whether and, if so, when to file a *nolle prosequi*, and thus in this case it had thirty days to note an appeal from September 3, 2021, when, by its entry of the *nolle prosequi* on count four, the entire case was dismissed. In other words, when the State "exercised its discretion to enter a *nolle prosequi* on count 4, the prosecution ended with a final judgment embracing the partial dismissal order, and the State thus became authorized to appeal the dismissal of

5

counts 1-3 pursuant to [Md. Code Ann.,] Cts. & Jud. Proc. § 12-302(c)(2)." We agree with the State.

"We have defined entering a nolle prosequi 'as an official declaration by the State, announcing that it will not pursue the charges in a particular charging document.'" *State v. Simms*, 456 Md. 551, 557-58 (2017) (quoting *Gilmer v. State*, 389 Md. 656, 659 n.2 (2005)). A prosecutor has complete discretion as to what offenses to charge in a particular case. *Oglesby v. State*, 441 Md. 673, 680 (2015). "[T]he State's Attorneys retain the broad discretion they have historically enjoyed in determining which cases to prosecute, which offenses to charge, and how to prosecute the cases they bring." *Evans v. State*, 396 Md. 256, 298 (2006). Further, "[t]he entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent."[3] *Ward v. State*, 290 Md. 76, 83 (1981); *accord*, *Simms*, 456 Md.

---

[3] The State acknowledges in its brief that the prosecutor's power is not absolute, but that the judicially prescribed limits on such power are not applicable to this case. *See Hook v. State*, 315 Md. 25, 35-36 (1989) (explaining that the entry of a nolle prosequi by the prosecuting attorney "is not completely without restraint"); *see e.g.*, *State v. Simms*, 456 Md. 551, 561 (2017) ("[W]e have prohibited the State's entry of a nol pros in circumstances where a defendant's right to a speedy trial or . . . a fair trial has been undermined."); *Curley v. State*, 299 Md. 449, 462 (1984) (explaining that where the State enters a nol pros that has the purpose or necessary effect of circumventing the defendant's right to a trial within the 180-day time limit, that nol pros is treated as a nullity); *Burrell v. State*, 340 Md. 426, 434 (1995) ("In considering whether an entry of nolle prosequi to a lesser included offense is unfair to the defendant, . . . the evidence must . . . be such that the jury could rationally convict *only* on the lesser included offense."); *Bynum v. State*, 277 Md. 703, 705 (1976) (citing *Barrett v. State*, 155 Md. 636, 638 (1928)) ("Where a nolle prosequi is entered before double jeopardy attaches, the state is merely precluded from further prosecution under the indictment or count so dismissed."); *see also Lee v. State*, 257 Md. App. 481, 526 (quoting *Hook*, 315 Md. at 42) ("By entering a nol pros while a motion to stay was pending, and while the State still had more than a week before [statute] required action, the

(continued...)

at 561.  As recently reiterated by this Court, "a *nol pros* 'is not an occasion for skepticism or suspicion,' but rather, 'it is a legitimate and accepted way of doing prosecutorial business.'" *White v. State*, 250 Md. App. 604, 628 (2021) (quoting *Baker v. State*, 130 Md. App. 281, 288 (2000)).

Here, appellee seeks to take the thirty-day appeal period of Rule 8-202(a) and engraft it as a time limit on the prosecutor's power to enter a *nolle prosequi* when the court has dismissed some, but not all, of the counts of an indictment.  Appellee cites to no authority for such principle of law, and we have found none.  Neither the Maryland Rules nor case law provide for a time limit from the entry of an order dismissing some, but not all, counts of an indictment and when a *nolle prosequi*, if elected by the prosecutor, must be entered.[4]  Further, as the State correctly points out, an appeal cannot be taken by the State from an order dismissing fewer than all counts of an indictment.  *State v. Gibson*, 4 Md. App. 236, 240 n.1 (1968); *see State v. Gregg*, 163 Md. 353, 353 (1932) (explaining that an appeal is not permitted if, after sustaining a demurrer to one or more counts, one count still remains).  Therefore, once the State entered the *nolle prosequi* on count four, there was then a final judgment from which the State could appeal under Cts. & Jud. Proc. § 12-302(c)(2).  Accordingly, appellee's motion to dismiss the instant appeal is denied.

State violated the requirement that the entry of a nol pros conform to 'the rudimentary demands of fair procedure[.]'"), *cert. granted sub nom., Syed v. Lee*, 483 Md. 589 (2023).

[4] Of course, a prosecution of any remaining counts are subject to the *Hicks* Rule and the constitutional right to a speedy trial.  *See State v. Hicks*, 285 Md. 310, 318 (1979).

## STANDARD OF REVIEW

"'[T]he standard of review of the grant or denial of a motion to dismiss is whether the trial court was legally correct.'" *Lipp v. State*, 246 Md. App. 105, 110 (2020) (quoting *Howard v. Crumlin*, 239 Md. App. 515, 521 (2018)). Accordingly, we review the granting or denial of a motion to dismiss *de novo*. *Myers v. State*, 248 Md. App. 422, 431 (2020) (citing *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350 (2019); *Lipp*, 246 Md. App. at 110). Further, we may affirm a trial court's judgment on any ground adequately supported by the record, whether or not that ground was relied upon or even considered by the court below. *Unger v. State*, 427 Md. 383, 406 (2012) (citing *U.S. v. Arthur Young*, 465 U.S. 805, 814 n.12 (1984)).

## DISCUSSION

### A. Preliminary Issue – What Statutes Are Involved

Title 2 of the Criminal Law Article in the Maryland Code governs homicide. Subtitle 1 of Title 2 contains the general provisions of the title, including section 2-103, entitled "Murder or manslaughter of viable fetus." Section 2-103 was enacted by the Maryland General Assembly in 2005, and provides, in its entirety:[5]

---

[5] When originally enacted, section 2-103 contained subsection (h), which read:

> (h) The commission of first degree murder of a viable fetus under this section, in conjunction with the commission of another first degree murder arising out of the same incident, does not constitute an aggravating circumstance subjecting a defendant to the death penalty under § 2-303(g)(ix) of this article.

(continued...)

8

(a) *"Viable" defined.* – For purposes of a prosecution under this title, "viable" has the meaning stated in § 20-209 of the Health--General Article.

(b) *Murder or manslaughter of viable fetus.* – **Except as provided in subsections (d) through (f) of this section, a prosecution may be instituted for murder or manslaughter of a viable fetus.**

**(c)** *Intent.* – **A person prosecuted for murder or manslaughter as provided in subsection (b) of this section must have:**

　　(1) intended to cause the death of the viable fetus;

　　(2) intended to cause serious physical injury to the viable fetus; or

　　(3) **wantonly or recklessly disregarded the likelihood that the person's actions would cause the death of or serious physical injury to the viable fetus.**

(d) *Right to terminate pregnancy.* – Nothing in this section applies to or infringes on a woman's right to terminate a pregnancy as stated in § 20-209 of the Health--General Article.

(e) *Liability of medical professionals.* – Nothing in this section subjects a physician or other licensed medical professional to liability for fetal death that occurs in the course of administering lawful medical care.

(f) *Act or failure to act of pregnant woman.* – Nothing in this section applies to an act or failure to act of a pregnant woman with regard to her own fetus.

(g) *Personhood or rights of fetus.* – Nothing in this section shall be construed to confer personhood or any rights on the fetus.

(Emphasis added.)  Section 2-103 was the first law in Maryland that permitted the State to

charge a person with the murder or manslaughter of a viable fetus.  It is important to note,

---

With the abolition of the death penalty in Maryland in 2013, the General Assembly also deleted subsection (h) of section 2-103.  2013 Md. Laws ch. 156, § 3.

however, that section 2-103 does not create a new crime, nor does it contain any penalty provisions. Instead, the statute defines the circumstances under which the State may prosecute a person for the murder or manslaughter of a viable fetus.

Subtitle 2 of Title 2 of the Criminal Law Article contains the statutes governing the crimes of murder in the first degree (CR §§ 2-201, 2-203); murder in the second degree (CR § 2-204); attempt to commit murder in the first degree (CR § 2-205); attempt to commit murder in the second degree (CR § 2-206); manslaughter (CR § 2-207); manslaughter by vehicle or vessel (CR § 2-209); and criminally negligent manslaughter by vehicle or vessel (CR § 2-210). The statutes governing murder (CR §§ 2-201, 2-203–204) do not create any new statutory crimes, but rather divide the crime of murder, as known at common law, into degrees. *Newton v. State*, 280 Md. 260, 266 (1977); *Campbell v. State*, 293 Md. 438, 441 (1982); *Selby v. State*, 76 Md. App. 201, 210 (1988). Similarly, because the statute governing manslaughter (CR § 2-207) prescribes only a penalty, the crime of manslaughter is still a common law offense. *Connor v. State*, 225 Md. 543, 558 (1961); *see Gibson*, 4 Md. App. at 241 (stating that, because the crime of manslaughter "is not defined by statute, it is afforded its common law meaning in this State"). On the other hand, the crime of manslaughter by vehicle or vessel (CR § 2-209) is a statutory crime by which "the General Assembly repealed that portion of the crime of common law involuntary manslaughter dealing with unintended homicides resulting from the operation of motor vehicles." *Forbes v. State*, 324 Md. 335, 339 (1991).

Subtitle 5 of Title 2 of the Criminal Law Article contains statutes governing the crimes of homicide by motor vehicle or vessel while under the influence of alcohol or under

10

the influence of alcohol per se (CR § 2-503); homicide by motor vehicle or vessel while impaired by alcohol (CR § 2-504); homicide by motor vehicle or vessel while impaired by drugs (CR § 2-505); and homicide by motor vehicle or vessel while impaired by a controlled dangerous substance (CR § 2-506). These statutory crimes were first enacted by the General Assembly in 1978. 1978 Md. Laws, ch. 454.

As stated above, appellee was ultimately charged with violating CR §§ 2-209, 2-210, and 2-503. Section 2-209, the statute governing manslaughter by vehicle or vessel, states, in relevant part:

> (b) *Prohibited.* – A person may not cause the death of another as a result of the person's driving, operating, or controlling a vehicle or vessel **in a grossly negligent manner.**

CR § 2-209(b) (emphasis added).

CR § 2-210, the statute that criminalizes causing the death of another by operation of a vehicle in a criminally negligent manner, states, in relevant part:

> (b) *Prohibited.* – A person may not cause the death of another as the result of the person's driving, operating, or controlling a vehicle or vessel **in a criminally negligent manner.**
>
> (c) *Criminal negligence.* – For purposes of this section, a person acts in a criminally negligent manner with respect to a result or a circumstance when:
>
>> (1) the person should be aware, but fails to perceive, that the person's conduct creates a substantial and unjustifiable risk that such a result will occur; and
>>
>> (2) the failure to perceive constitutes a gross deviation from the standard of care that would be exercised by a reasonable person.

CR § 2-210(b)–(c) (emphasis added).

11

Finally, CR § 2-503, which is the statute governing homicide by motor vehicle or vessel while under the influence of alcohol or under the influence of alcohol per se, provides, in relevant part:

> (a) *Prohibited.* – A person may not cause the death of another **as a result of the person's negligently** driving, operating, or controlling a motor vehicle or vessel while:
>
> (1) under the influence of alcohol; or
>
> (2) under the influence of alcohol per se.

CR § 2-503(a) (emphasis added).

At the outset, it is important to note the *mens rea* that is required for the prosecution of murder or manslaughter of a viable fetus. In order to prosecute a person for the murder or manslaughter of a viable fetus, CR § 2-103 requires that the State prove that the defendant either: "(1) intended to cause the death of the viable fetus; (2) intended to cause serious physical injury to the viable fetus; or (3) wantonly or recklessly disregarded the likelihood that the person's actions would cause the death of or serious physical injury to the viable fetus." CR § 2-103(c)(1)–(3).

Of relevance to this case is the *mens rea* of "wanton or reckless disregard" as prescribed in CR § 2-103(c)(3). In order to prosecute a person for manslaughter by vehicle or vessel, CR § 2-209 requires the State to prove that the person acted "in a grossly negligent manner." CR § 2-209(b). The State argues that the *mens rea* of CR § 2-103(c)(3) is equivalent to the *mens rea* of CR § 2-209(b). The State, however, concedes that the *mens rea* of CR § 2-210(b)–(c) and CR § 2-503(a) permit conviction upon proof of a mental state less culpable than CR § 2-103(c)(3) allows. In its brief, the State argues:

12

Because Section 2-103 requires the State to prove a certain mens rea to prosecute a person for the murder or manslaughter of a viable fetus—that is, specific intent (C[R] § 2-103(c)(1) and (2)), which is not relevant here, or wanton or reckless disregard of the likelihood of causing death or serious physical injury to the viable fetus, C[R] § 2-103(c)(3), which is relevant here—the State's focus is on Count One, which charged Fabien with grossly negligent manslaughter by motor vehicle in violation of C[R] § 2-209.

Counts Two and Three alleged, respectively, negligent homicide by motor vehicle while under the influence of alcohol per se, in violation of C[R] § 2-503, and criminally negligent manslaughter by operation of a motor vehicle, in violation of C[R] § 2-210(b). These substantive offenses permit conviction on proof of mental states less culpable than C[R] § 2-103(c)(3) allows. . . . **The State acknowledges that it would have to prove the mental state of gross negligence in a prosecution for the death of Braylen Berry, the viable fetus.**

(Emphasis added.) Thus, the State claims that it can still prosecute appellee under CR § 2-210 and CR § 2-503, provided the State proves the *mens rea* of gross negligence. In response, appellee construes the State's position as conceding that there can be no prosecution of appellee under CR § 2-210 and CR § 2-503. In its reply brief, the State does not concede that there cannot be a prosecution under these sections.

In our view, CR § 2-103(c)(3) establishes a *mens rea* standard higher than the *mens rea* required under CR § 2-210(b)–(c) and CR § 2-503(a). Consequently, CR § 2-103 simply does not apply to a prosecution for a violation of CR § 2-210 and CR § 2-503. *Cf. Kilmon v. State*, 394 Md. 168, 181 (2006) (stating that CR § 2-103 "did *not* encompass the reckless endangerment statute" (CR § 3-204(a)(2))). Therefore, the decision of the trial court to dismiss counts two and three must be affirmed. Accordingly, this opinion will focus exclusively on the challenge by appellee to his prosecution under CR § 2-209 (manslaughter by vehicle or vessel).

13

**B. The Issue**

The issue raised by the State's question in the instant appeal is whether CR § 2-103 ("murder or manslaughter of a viable fetus") applies to CR § 2-209 ("manslaughter by vehicle or vessel"), both generally and under the circumstances of this case. Because the issue is entirely one of statutory construction, we must determine whether, in enacting CR § 2-103, the General Assembly intended that the statute apply to CR § 2-209, and if so, whether the General Assembly intended to include the conduct of appellee as charged in the indictment.

In *Daughtry v. Nadel*, 248 Md. App. 594 (2020), this Court summarized the principles of statutory construction:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly. To determine the General Assembly's purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. In interpreting a statute's plain language, we must read the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. In doing so, our inquiry is not confined to the specific statutory provision at issue on appeal. Instead, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute.

*Id.* at 611-12 (cleaned up).

Further, the Supreme Court of Maryland[6] has observed that "[w]hile not necessary in every instance, we often find it prudent to scrutinize the legislative history to confirm

---

[6] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court

(continued...)

that our interpretation of the statute's plain language accords with the [L]egislature's intent." *Berry v. Queen*, 469 Md. 674, 687-88 (2020) (citing *Neal v. Balt. City Bd. of Sch. Comm'rs*, 467 Md. 399, 415-16 (2020)). Finally, this Court has said:

> "In addition to legislative history, we may and often must consider other external manifestations or persuasive evidence in order to ascertain the legislative purpose behind a statute. Specifically, [courts] should consider the context of the bill, including the title and function paragraphs, the amendments to the legislation as well as the bill request form. [Courts] may also analyze the statute's relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case."

*State v. Williams*, 255 Md. App. 420, 440 (2022) (quoting *Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018)).

## C. Statutory History of CR § 2-103

### 1. *Murder and Manslaughter in Maryland*

To gain a better understanding of the statutory history of CR § 2-103 and its relationship to CR § 2-209, a brief review of the history of murder and manslaughter in Maryland is instructive.

In 1776 the framers of the Constitution of Maryland adopted the common law of England as a part of the law of Maryland. Md. Const. Decl. of Rts., art. 5; *Gladden v. State*, 273 Md. 383, 389 (1974). Included in the common law of England were the common

of Maryland. The name change took effect on December 14, 2022. *See also*, Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute, ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland . . . .").

law crimes of murder and manslaughter. *See Gladden*, 273 Md. at 389 (stating that "the ingredients and elements of murder are as they were at common law"); *Gibson*, 4 Md. App. at 241 (stating that "[m]anslaughter is a common law offense . . . and since the crime is not defined by statute, it is afforded its common law meaning in this State").

In 1809, the General Assembly made its first attempt to codify Maryland's criminal law by enacting chapter 138 of the Acts of 1809. Charles E. Moylan, Jr., *Criminal Homicide Law* § 2.14, at 32 (2002). "[T]he Legislature divided the crime of murder as it was known at common law into first and second degrees and attached penalties therefor…" *Gladden*, 273 Md. at 389-90; *accord*, *Evans v. State*, 28 Md. App. 640, 683 (1975). The act, however, did not create a new statutory offense; it left "the common law definition of the crime of murder undisturbed." *Evans*, 28 Md. App. at 683 (citing *Davis v. State*, 39 Md. 355 (1874)). Similarly, the act did not define the common law crime of manslaughter; it merely prescribed a ten-year imprisonment as the maximum penalty. 1809 Md. Laws, ch. 138, § 4(3); *Bowers v. State*, 227 Md. App. 310, 323-24 (2016).

Except for the changes in the capital punishment provisions of the statute and the ultimate repeal of such provisions, "there has been virtually no change in Maryland's criminal homicide law between 1809 and the present day." Moylan, *Criminal Homicide Law* § 2.14, at 34. Prior to the 2002 recodification of Maryland's criminal law into the Criminal Law Article, the provisions of section 3, chapter 138, Laws of 1809, regarding first-degree murder, were codified in Md. Code Ann., Article 27, §§ 407–410, and the provision of section 3 regarding second-degree murder was codified in Article 27, § 411.

16

For manslaughter, the provision in section 4(3) of chapter 138 of the Laws of 1809 was codified in Article 27, § 387. *See Bowers*, 227 Md. App. at 323-24.

Before taking a closer look at the 2002 recodification that created the Criminal Law Article, we need to consider the separate statutory crimes enacted by the General Assembly to address homicides that result from the operation of an automobile or other modalities of transportation. The first is what Judge Moylan called "one small latter-day spinoff" of common law manslaughter, namely, "the separate statutory crime of manslaughter by automobile." Moylan, *Criminal Homicide Law* § 8.1, at 151, § 12.11, at 240. Judge Moylan explained: "The statutory crime was enacted by Chapter 414 of the Acts of 1941. It cut out from the general ranks of manslaughter those particular manslaughters that were 'the result of the driving, operation or control of' certain modalities of transportation 'in a grossly negligent manner.'" *Id.* § 12.11, at 240. Further, according to Judge Moylan, the *actus reus* and *mens rea* of the statutory crime was "common law gross negligence manslaughter." *Id.* Prior to the 2002 recodification, the statutory crime of manslaughter by automobile was codified in Article 27, § 388.

Second, in 1978 the General Assembly added the crime of homicide by motor vehicle or vessel while intoxicated. This Court summarized the purpose of the new law, in comparison to manslaughter by automobile, in *Loscomb v. State*, 45 Md. App. 598, 600-01 (1980):

> Cognizant of the degree of difficulty confronting State's Attorneys' efforts to prove "gross negligence" in order to establish guilt under section 388, the Legislature enacted a new substantive offense that contained many of the elements of manslaughter by motor vehicle, but added the additional

17

factor of "intoxication," and reduced the "gross negligence" standard of section 388 to "negligence."  Md. Ann. Code art. 27, [§] 388A.

(Footnote omitted.)  Prior to the 2002 recodification, the name of the statutory crime of homicide by motor vehicle or vessel while intoxicated was changed to homicide by motor vehicle or vessel while under the influence of alcohol and, as indicated in the above quotation from *Loscomb*, was codified in Article 27, § 388A.[7]

## 2. *2002 Recodification of Maryland's Criminal Law*

In 2002 the General Assembly enacted Chapter 26, Acts of 2002, for the purpose of adding a new article to the Annotated Code of Maryland, called the "Criminal Law Article," which, among other things, revised, restated, and recodified the laws of Maryland relating to criminal law.  2002 Md. Laws, ch. 26.  As originally enacted, the Criminal Law Article consisted of fourteen titles, Titles 1 through 14.  Title 2, entitled "Homicide," contained five subtitles.  Relevant to the instant appeal are subtitle 2, entitled "Murder and Manslaughter," and subtitle 5, entitled "Homicide by Motor Vehicle or Vessel While Impaired or Under the Influence." *Id.*

Under subtitle 2, murder in the first degree was set forth in section 2-201(a) without substantive change from Article 27, §§ 407–410; murder in the second degree was set forth in section 2-204(a) without substantive change from Article 27, § 411; manslaughter was

_____

[7] Article 27, § 388A included the crimes of homicide by motor vehicle or vessel while under the influence of alcohol (§ 388A(b)); homicide by motor vehicle or vessel while impaired by alcohol (§ 388A(c)); homicide by motor vehicle or vessel while impaired by drugs (§ 388A(d)); and homicide by motor vehicle or vessel while impaired by a controlled dangerous substance (§ 388A(e)).

18

set forth in section 2-207(a) without substantive change from Article 27, § 387; and manslaughter by vehicle or vessel was set forth in section 2-209 without substantive change from Article 27, § 388. Section 2-209(c) expressly provided that the "[n]ame of [the] crime" "is manslaughter by vehicle or vessel."

Under subtitle 5, homicide by motor vehicle or vessel while under the influence of alcohol or under the influence of alcohol per se was set forth in section 2-503 without substantive change from Article 27, § 388A(b).[8] Section 2-503(b) expressly provided that the "[n]ame of [the] crime" "is (1) homicide by motor vehicle or vessel while under the influence of alcohol; or (2) homicide by motor vehicle or vessel while under the influence of alcohol per se." CR § 2-503(b).

The relevant provisions of the 2002 recodification of homicide laws into Title 2 of the Criminal Law Article, as outlined above, set the stage upon which the General Assembly acted to address the lack of a fetal homicide law in Maryland in the wake of the murder in 2002 of Laci Peterson, who was then eight months pregnant. The murder and subsequent highly publicized prosecution of Laci's husband, Scott Peterson, on two counts of murder under California law prompted Congress to pass the federal Unborn Victims of Violence Act in 2004 and approximately twenty states to establish criminal penalties for

---

[8] Homicide by motor vehicle or vessel while impaired by alcohol was set forth in section 2-504 without substantive change from Article 27, § 388A(c); homicide by motor vehicle or vessel while impaired by drugs was set forth in section 2-505 without substantive change from Article 27, § 388A(a)(4), (d); and homicide by motor vehicle or vessel while impaired by a controlled dangerous substance was set forth in section 2-506 without substantive change from Article 27, § 388A(a)(5), (e). CR §§ 2-504–506.

fetal homicide.  Marka B. Fleming, *Feticide Laws: Contemporary Legal Applications and Constitutional Inquiries*, 29 Pace L. Rev. 43, 49-52 (2008); *see also* Carolyn B. Ramsey, *Restructuring the Debate Over Fetal Homicide Laws*, 67 Ohio St. L.J. 721 (2006).

> 3. *The 2004 Legislative Session*

In early 2004 Delegate Charles R. Boutin (R – Harford) introduced House Bill 520, entitled "Homicide – Victim – Viable Fetus," "for the purpose of establishing that for certain murder, manslaughter, or other unlawful homicide prosecutions . . . the victim may include a viable fetus."  H.B. 520 (2004).  H.B. 520 would accomplish its purpose by adding section 2-103 to the Criminal Law Article.  H.B. 520 read, in relevant part:

### Homicide – Victim – Viable Fetus

> FOR the purpose of establishing that for certain murder, manslaughter, or other unlawful homicide prosecutions and under certain conditions the victim may include a viable fetus; defining a certain term; providing for the construction of certain provisions of this Act; providing for application of this Act; and generally relating to prosecution for murder, manslaughter, or other unlawful homicide.

*     *     *

### Article – Criminal Law

(A) FOR PURPOSES OF A PROSECUTION UNDER THIS TITLE, "VIABLE" HAS THE MEANING STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.

(B) EXCEPT AS PROVIDED IN SUBSECTIONS (C) AND (D) OF THIS SECTION, A PROSECUTION MAY BE INSTITUTED FOR MURDER, MANSLAUGHTER, OR UNLAWFUL HOMICIDE, WHETHER AT COMMON LAW OR UNDER THIS TITLE, FOR AN ACT OR OMISSION THAT:

> (1) OCCURRED WHILE THE VICTIM WAS A VIABLE FETUS; AND

20

(2) CAUSED THE DEATH OF THE VICTIM.

(C) NOTHING IN THIS SECTION APPLIES TO OR INFRINGES ON A WOMAN'S RIGHT TO TERMINATE A PREGNANCY AS STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.

(D) NOTHING IN THIS SECTION SUBJECTS A PHYSICIAN TO PROSECUTION FOR A DECISION TO PERFORM AN ABORTION AS STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.

Because of concerns that the bill would adversely affect the reproductive rights of women, H.B. 520 received an unfavorable report in the Judiciary Committee of the House of Delegates. *See Abortion debate endangers resurrected Unborn Victims of Violence bill*, DAILY REC. (Feb. 21, 2005), https://thedailyrecord.com/2005/02/21/abortion-debate-endangers-resurrected-unborn-victims-of-violence-bill/. By failing to be favorably reported by the House Judiciary Committee, H.B. 520 did not proceed to the floor of the House and thus was not enacted into law. *See The Legislative Process: How a Bill Becomes a Law*, MD. STATE ARCHIVES (Sept. 14, 2022), https://msa.maryland.gov/msa/mdmanual/07leg/html/proc.html#committees.

### 4. *The 2005 Legislation Session*

In the 2005 legislative session, Delegate Boutin introduced H.B. 398, a bill identical to the previous year's failed H.B. 520. This time, however, H.B. 398 successfully worked its way through the legislative process, and with several significant amendments, to be discussed below, was passed by the General Assembly and signed by Governor Robert Ehrlich, Jr. on May 26, 2005. 2005 Md. Laws, ch. 546.

As originally introduced, H.B. 398 was broad in scope, encompassing certain prosecutions for "murder, manslaughter, or unlawful homicide" where the victim was a

21

viable fetus and specifying that such prosecutions may be instituted "whether at common law or under this Title." However, several amendments were adopted that significantly narrowed the scope of H.B. 398 and expanded its exceptions or limitations. Of relevance to the instant appeal, the phrases "unlawful homicide" and "at common law or under this Title" were stricken from the language of the bill; a new section was added to the bill that specifically set forth the *mens rea* necessary for a prosecution; and a new limitation was added that stated: "Nothing in this section shall be construed to confer personhood or any rights on the fetus." *See* H.B. 398, Second Reader – March 25, 2005, p. 3. H.B. 398, as adopted by the General Assembly, including all additional and stricken language by amendment, reads:

AN ACT concerning

### ~~Homicide~~ Murder and Manslaughter – ~~Victim~~ – Viable Fetus

FOR the purpose of establishing that <u>a prosecution may be instituted</u> for ~~certain murder, manslaughter, or~~ <u>murder or manslaughter of a viable fetus</u> ~~other unlawful homicide prosecutions and~~ under certain conditions ~~the victim may include~~ <u>for an act or failure to act that cause the death of a viable fetus</u>; defining a certain term; providing for the construction of certain provisions of this Act; <u>providing that the commission of certain acts under certain circumstances shall not constitute a certain aggravating circumstance;</u> providing for the application of this Act; and generally relating to prosecution for ~~murder, manslaughter, or~~ <u>murder or manslaughter.</u> ~~other unlawful homicide.~~

\*      \*      \*

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

### Article – Criminal Law

2-103.

(A)    FOR PURPOSES OF A PROSECUTION UNDER THIS TITLE, "VIABLE" HAS THE MEANING STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.

(B)    EXCEPT AS PROVIDED IN SUBSECTIONS ~~(C) AND (D)~~ (D) THROUGH (F) OF THIS SECTION, A PROSECUTION MAY BE INSTITUTED FOR ~~MURDER, MANSLAUGHTER, OR UNLAWFUL HOMICIDE OF A FETUS, WHETHER AT COMMON LAW OR UNDER THIS TITLE, FOR AN ACT OR OMISSION~~ FAILURE TO ACT THAT:

(1)    ~~OCCURRED WHILE THE VICTIM FETUS WAS A VIABLE FETUS; AND~~

(2)    ~~CAUSED THE DEATH OF THE VICTIM VIABLE FETUS~~ MURDER OR MANSLAUGHTER OF A VIABLE FETUS.

(C)    A PERSON PROSECUTED FOR ~~MURDER, MANSLAUGHTER, OR UNLAWFUL HOMICIDE~~ MURDER OR MANSLAUGHTER AS PROVIDED IN SUBSECTION (B) OF THIS SECTION MUST HAVE:

(1)    INTENDED TO CAUSE THE DEATH OF THE VIABLE FETUS ~~OR PREGNANT WOMAN~~;

(2)    INTENDED TO CAUSE SERIOUS PHYSICAL INJURY TO THE VIABLE FETUS ~~OR PREGNANT WOMAN~~; OR

(3)    ~~WILLFULLY~~ WANTONLY OR RECKLESSLY DISREGARDED THE LIKELIHOOD THAT ~~THE ACT OR FAILURE TO ACT~~ THE PERSON'S ACTIONS WOULD CAUSE THE DEATH OF OR SERIOUS PHYSICAL INJURY TO THE VIABLE FETUS ~~OR THE PREGNANT WOMAN~~.

~~(C)~~ (D)    NOTHING IN THIS SECTION APPLIES TO OR INFRINGES ON A WOMAN'S RIGHT TO TERMINATE A PREGNANCY AS STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.

~~(D)    NOTHING IN THIS SECTION SUBJECTS A PHYSICIAN TO PROSECUTION FOR A DECISION TO PERFORM AN ABORTION AS STATED IN § 20-209 OF THE HEALTH – GENERAL ARTICLE.~~

23

(E)    NOTHING IN THIS SECTION SUBJECTS A PHYSICIAN OR OTHER LICENSED MEDICAL PROFESSIONAL TO LIABILITY FOR FETAL DEATH THAT OCCURS IN THE COURSE OF ADMINISTERING ~~REASONABLE~~ LAWFUL MEDICAL CARE.

(F)    NOTHING IN THIS SECTION APPLIES TO AN ACT OR FAILURE TO ACT OF A PREGNANT WOMAN WITH REGARD TO HER OWN FETUS.

(G)    NOTHING IN THIS SECTION SHALL BE CONSTRUED TO CONFER PERSONHOOD OR ANY RIGHTS ON THE FETUS.

(H)    THE COMMISSION OF FIRST DEGREE MURDER OF A VIABLE FETUS UNDER THIS SECTION, IN CONJUNCTION WITH THE COMMISSION OF ANOTHER FIRST DEGREE MURDER ARISING OUT OF THE SAME INCIDENT, DOES NOT CONSTITUTE AN AGGRAVATING CIRCUMSTANCE SUBJECTING A DEFENDANT TO THE DEATH PENALTY UNDER § 2-303(G)(IX) OF THIS ARTICLE.

*Id.*

### D. Applicability of CR § 2-103 to CR § 2-209 – In General

*1. Statutory Interpretation of CR § 2-103*

Although the instant appeal is a State's appeal from the trial court's grant of a motion to dismiss, the parties' arguments regarding the statutory interpretation of CR § 2-103 are best understood by presenting appellee's argument first.

Appellee argues that the plain language and legislative history of CR § 2-103 make clear that "the [L]egislature intended to permit prosecution for the common law offenses of murder or manslaughter and nothing more." Regarding the plain language of the statute, appellee claims that "§ 2-103(b) lists only 'murder or manslaughter,' two common law crimes, and excludes the other statutory homicides in Title 2."

24

Concerning the legislative history of CR § 2-103, appellee points to several changes made to the bill and accompanying Fiscal and Policy Note as originally proposed. First, appellee cites to the elimination of the term "unlawful homicide" from the original bill. Second, appellee notes that the Fiscal and Policy Note accompanying the original bill stated that "[u]nlawful homicide includes murder, manslaughter, and homicide by motor vehicle or vessel," but once "unlawful homicide" was eliminated from the bill, the Fiscal and Policy Note instead read, "[t]his bill allows for the prosecution of murder or manslaughter of a viable fetus." Third, according to appellee, the deletion of the phrase "whether at common law or under this title" from the original bill further indicated a "narrowing of the bill's scope." Lastly, appellee notes that the bill's short title changed from "Homicide – Victim – Viable Fetus" to "Murder and Manslaughter – Viable Fetus." In short, appellee identifies all of these changes as being representative of the Legislature's intent to narrow the scope of the bill to apply solely to the common law crimes of murder and manslaughter and not to the statutory forms of homicide, such as "vehicular homicide" under CR § 2-209.

In response, the State argues that "[t]he normal, plain meaning of 'murder or manslaughter of a viable fetus' [under CR § 2-103] includes 'manslaughter' by whatever form. It includes manslaughter by motor vehicle." In other words, according to the State, "[a] conviction for violation of C[R] § 2-209 is manslaughter." Further, the State asserts that to limit the scope of CR § 2-103 to the common law crimes of murder and manslaughter, as advocated by appellee, "would require this Court to add 'common-law' to the statute. The General Assembly did not do that; this Court should not do that."

25

Regarding the legislative history of CR § 2-103, the State contends that the deletion of the phrases, "unlawful homicide" and "at common law or under this title," does not lead to appellee's conclusion that "murder or manslaughter" under CR § 2-103 is limited to only common law murder and manslaughter. According to the State, because the legislative bill file for H.B. 398 does not explain why the aforesaid deletions were made, the legislative history is ambiguous and thus "does not take precedence over the plain and ordinary meaning of the statute actually enacted." The State concludes:

> In sum, to construe "a person may be prosecuted for murder or manslaughter of a viable fetus" in the manner that [appellee] argues would mean that this Court would have to add words, *e.g.*, "common-law" or "but not statutory offenses," that are simply not in the plain text of the statute that the General Assembly adopted. By using "murder or manslaughter," the General Assembly intended C[R] § 2-103 to apply to all forms of murder or manslaughter, whether at common-law or otherwise.

In order to ascertain what crimes the Legislature intended to be covered by CR § 2-103, and specifically whether CR § 2-103 applies to CR § 2-209, we must look first to "the normal, plain meaning of the language of the statute." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 376 (2021). Here, CR § 2-103(b) states that, with certain exceptions not relevant to the instant appeal, "a prosecution may be instituted for murder or manslaughter of a viable fetus." The statutory crime set forth in CR § 2-209 is the same as common law gross negligence manslaughter when certain modalities of transportation are involved. *Forbes*, 324 Md. at 339 (stating that "[p]rior to the enactment of [the predecessor statute to CR § 2-209], the conduct which the jury found to exist in this case would have constituted an offense covered by the indictment, *i.e.* common law involuntary manslaughter"); *see* Moylan, *Criminal Homicide Law* § 12.11, at 240 (stating that "[t]he *actus reus* of the

26

statutory crime, other than being limited to those modalities," and "[t]he *mens rea* of the statutory crime" are "common law gross negligence manslaughter"). Indeed, in enacting CR § 2-209, the General Assembly specifically named the crime as "manslaughter by vehicle or vessel." CR § 2-209(c). Therefore, the plain meaning of the operative language of CR § 2-103 encompasses the statutory crime of manslaughter by vehicle or vessel under CR § 2-209.

Next, we consider our interpretation of the statute's plain language in the context of the overall statutory scheme to which it belongs. *In re Abhishek I*, 255 Md. App. 464, 472 (2022). Specifically, we look to the statute's legislative history, as well as amendments to the legislation, the title and function paragraphs, and the statute's relationship to earlier and subsequent legislation. *Williams*, 255 Md. App. at 440. Our goal is to confirm our interpretation of the statute's plain language as reflective of the legislative purpose or goal behind the statute. *Id.* When we conduct such analysis in the instant case, we come to the same conclusion as our interpretation of the plain language of CR § 2-103(b), i.e., a prosecution for the manslaughter of a viable fetus includes the prosecution of manslaughter by vehicle or vessel under CR § 2-209. We shall explain.

As set forth in detail above, when the General Assembly recodified the criminal law of Maryland into the Criminal Law Article in 2002, it placed the provisions relating to common law murder and manslaughter (CR §§ 2-201–208) *and* the statutory crime of *manslaughter* by vehicle or vessel (CR § 2-209) in subtitle 2. By contrast, the General Assembly placed all of the statutory crimes relating to *homicide* by motor vehicle or vessel (CR §§ 2-501–507) under subtitle 5. Further, in the 2002 recodification of the criminal

27

law, the General Assembly enacted section 2-102, which eliminated the year and a day rule.[9]  Using "new language derived without substantive change from former Art. 27 § 415," section 2-102 stated, in its entirety:

> A prosecution may be instituted for **murder, manslaughter, or unlawful homicide, whether at common law or under this title,** regardless of the time that has elapsed between the act or omission that caused the death of the victim and the victim's death.  (An. Code 1957, art. 27, § 415; 2002, ch. 26, § 2.)

(Emphasis added.)  The Revisor's Note[10] to section 2-102 reads, in relevant part: "The reference to 'unlawful homicide' is added to reflect the application of this section to the various types of homicide by motor vehicle or vessel under Subtitle 5 of this title, all derived from former Art. 27 § 388A."

---

[9] The "year and a day rule" was a common law rule that "the law will not recognize[] a homicide unless the death has resulted within a year and a day from the time of the act which is alleged to have caused the death."  *State v. Brown*, 21 Md. App. 91, 92 (1974). The rule "was the product of a day when medical science was not as advanced in terms of establishing a cause-and-effect relationship over so extended a period of time."  Moylan, *Criminal Homicide Law* § 1.6, at 7.  This Court recognized the "year and a day" rule in *Brown*, but indicated that if any change in the common law rule was to be made, it would be more appropriate for the General Assembly to make such change.  *Brown*, 21 Md. App. at 97.  In 1996, the General Assembly abrogated the "year and a day" rule by enacting what is now CR § 2-102.  1996 Md. Laws, ch. 360.

[10] "Revisor's Notes are an extrinsic aid designed to explain changes in the law that result from the revision process," and "have been used by courts to determine the intent of the General Assembly and the legislative history of statutory provisions."  DEP'T OF LEGIS. SERVS., LEGISLATIVE DRAFTING MANUAL 113 (2023); *see Moore v. RealPage Util. Mgmt., Inc.*, 476 Md. 501, 519 n.8 (2021) (stating that "[t]his Court has consistently reiterated the importance of reviewing the Revisor's Notes in ascertaining legislative intent" (quotation marks and citation omitted)); *Off. & Pro. Emps. Int'l Union, Loc. 2 (AFL-CIO) v. Mass Transit Admin.*, 295 Md. 88, 101 (1982) (stating that "[t]he notes or reports of a revisor or revision commission are entitled to considerable weight in ascertaining legislative intent").

In sum, the language and structure of Title 2 of the Criminal Law Article, as enacted in 2002, indicated an intent on the part of the General Assembly to use the phrase "murder, manslaughter" to refer to the common law *and* statutory forms of murder and manslaughter found in subtitle 2 and to use the term "unlawful homicide" to refer to the statutory crimes of homicide by motor vehicle or vessel found in subtitle 5.

Further, when the first iteration of CR § 2-103 was introduced in the 2004 legislative session (H.B. 520) and then again in the 2005 legislative session (H.B. 398), section 2-103(b) contained language identical to that of section 2-102: "a prosecution may be instituted for murder, manslaughter, or unlawful homicide, whether at common law or under this title . . . ." Thus H.B. 398, as originally drafted, included all of the common law and statutory crimes set forth or referred to in subtitles 2 and 5 of Title 2 of the Criminal Law Article.

During the legislative process that followed, however, the House Judiciary Committee amended H.B. 398 by deleting the phrase "murder, manslaughter, or unlawful homicide" from subsection (b) and inserted in its place the phrase "murder or manslaughter." As we have seen, the term "unlawful homicide" was used in the 2002 recodification to refer to the statutory crimes of homicide by motor vehicle or vessel set forth in subtitle 5. Therefore, by removing the term "unlawful homicide," the Committee narrowed the scope of H.B. 398 to the crimes referred to or set forth in subtitle 2, including CR § 2-209.

We disagree with appellee's contention that the deletion of the term "unlawful homicide" removed CR § 2-209 from the scope of CR § 2-103. Appellee relies on the

29

Fiscal and Policy Note accompanying H.B. 398 wherein "unlawful homicide" was identified as including "murder, manslaughter, and homicide by motor vehicle or vessel." Fiscal and Policy Note, H.B. 398, First Reader – February 15, 2005, p. 2, and Revised-House Third Reader – April 1, 2005, p. 2. Appellee's reliance on the Fiscal and Policy Note is misplaced. Fiscal and Policy Notes are not considered as authoritative sources for legal analysis of a bill. *See Logan v. Deitz*, ____ Md. App. ____, No. 1761, September Term 2021, slip op. at 40 n.10 (filed August 2, 2023) (stating that "[w]hile these notes provide a broad summary and background regarding the proposed bill, they are prepared by Department of Legislative Services staff and sometimes miss the detail and nuances that the committee staff provides in the committee bill analysis and floor reports"). But even if we consider the Fiscal and Policy Note in the instant case, appellee appears to equate CR § 2-209 with the crimes covered by "homicide by motor vehicle or vessel," and thus when "unlawful homicide" was deleted, so too were all homicides by motor vehicle or vessel. What appellee overlooks is that "homicide by motor vehicle or vessel" refers only to the homicides set forth in subtitle 5, because the name of each homicide set forth in the statute begins with "homicide by motor vehicle or vessel." CR § 2-209, on the other hand, is expressly named "manslaughter by vehicle or vessel."[11] Indeed, the word "homicide" appears nowhere in CR § 2-209.

---

[11] Also, the homicides set forth in subtitle 5 are limited to the transportation modalities of a "motor vehicle" or vessel. By contrast, CR § 2-209 is limited to the transportation modalities of a "vehicle" or vessel, with "vehicle" defined as including a "motor vehicle, street car, locomotive, engine, and train." *See* CR § 2-503–506; CR § 2-209(a).

Finally, the House Judiciary Committee passed other amendments to H.B. 398 consistent with the objective of narrowing the scope of CR § 2-103 to subtitle 2. The Committee deleted the phrase "under this title," because "this title" meant Title 2 of the Criminal Law Article and Title 2 included both subtitles 2 and 5. The Committee also deleted the phrase "at common law." If, as argued by appellee, the General Assembly intended to limit the scope of CR § 2-103 to only the common law crimes of murder and manslaughter, the phrase "at common law" would not have been deleted. In its reply brief, the State aptly points out that, if "the [L]egislature intended to limit the scope of C[R] § 2-103 to *common-law* murder or manslaughter, it knew precisely how to do that – by adding 'common-law' to modify 'murder or manslaughter.'"[12] Therefore, by deleting the phrase "at common law," the Committee intended that the scope of CR § 2-103 encompass all of the crimes of murder and manslaughter under subtitle 2, both at common law and by statute.

From the above consideration of the plain language of CR § 2-103, the legislative history of CR § 2-103, the structure of Title 2 of the Criminal Law Article at the time of its enactment, the language of CR § 2-102 with its accompanying Revisor's Note, and relevant amendments to H.B. 398 during the legislative process, this Court concludes that a prosecution for manslaughter of a viable fetus under CR § 2-103 applies to CR § 2-209, manslaughter by vehicle or vessel.

---

[12] The State cites to several statutes in which the term "common-law" is used as a modifier: "*See, e.g.*, Md. Code Ann., Corps. & Ass'ns § 11-102 ('common-law deceit'); Agric. § 3-602 ('common-law enclosure'); Cts. & Jud. Proc. § 5-526 ('common-law privileges or immunities'); Cts. & Jud. Proc. § 4-301 ('common-law or statutory misdemeanor'); Com. Law § 11-1207 ('common law or statutory defense or immunity')."

31

## 2. *The Statutory Meaning of "Another" Under CR § 2-209*

Separate and apart from a statutory interpretation of CR § 2-103, appellee claims that a prosecution for manslaughter of a viable fetus cannot be instituted under CR § 2-209, because the language of CR § 2-209(b) precludes such prosecution. Specifically, CR § 2-209(b) provides that "[a] person may not cause the death of *another* as a result of the person's driving, operating, or controlling a vehicle or vessel in a grossly negligent manner." (Emphasis added.) Appellee argues that "another" in CR § 2-209(b) "means another person, not a viable fetus."

Appellee's argument was adopted by the trial court in the instant case when the court dismissed counts one, two, and three of the indictment. In its written opinion, the court relied on the case of *Kilmon v. State*, 394 Md. 168 (2006), in which the Supreme Court of Maryland addressed the question of "whether the intentional ingestion of cocaine by a pregnant woman can form the basis for a conviction under [CR § 3-204(a)(1)] of the reckless endangerment of the later-born child." *Id.* at 170. Recognizing that the *Kilmon* case was not dispositive of the issue in the instant case, the trial court focused on the Supreme Court's analysis of what constitutes "another" under the reckless endangerment statute, CR § 3-204(a)(1). The trial court pointed to the Supreme Court's statement that "by 'another,' it obviously meant another person." The court then looked at CR § 2-103(g), which states that "[n]othing in this section shall be construed to extend personhood or any rights on the fetus." According to the court, "[h]ad the [L]egislature intended to extend personhood or rights of the fetus beyond the confines of this statute, it would have done so, and would not have specifically limited the construction of personhood." The trial court

32

concluded that, because CR §§ 2-209(b), 2-210(b), and 2-503(a) all require the death of "another," such death must "be that not of a fetus, but the child, after the child's live birth."

On appeal, the State argues that the trial court's reliance on *Kilmon* is misplaced because our Supreme Court's focus in that case was the reckless endangerment statute, CR § 3-204(a), and not the manslaughter by vehicle or vessel statute, CR § 2-209. In any event, according to the State, the Supreme Court's analysis in *Kilmon* actually supports its position because "the Court recognized, in *dicta*, at least, that, with the enactment of C[R] § 2-103, it would have been possible to prosecute, but for the exemption in subsection (f), a pregnant woman for common-law manslaughter who, by ingesting drugs, recklessly caused the death of her viable fetus." In addition, the State argues that the trial court construed "another" too narrowly given the clear purpose of the statutory scheme and legislative history of CR § 2-103. The State explains that, "[w]hen the law changed to permit the prosecution of a person for murder or manslaughter of a viable fetus, a viable fetus was recognized as 'another' legal victim of the various forms of murder and manslaughter, including gross [negligence] manslaughter by motor vehicle." The State concludes that the purpose of CR § 2-103 "was to recognize that a viable fetus, in addition to a person, could be a victim of murder or manslaughter," and thus CR § 2-103 "was intended to apply to all forms of murder and manslaughter."

In response, appellee argues that the Legislature's use of the term, "another," throughout the entire Criminal Law Article means another person, and not a viable fetus. Appellee reasons that "[i]nstead of expanding the definition of person, the [L]egislature chose to allow the prosecution of murder and manslaughter where a viable fetus dies as

opposed to a person." According to appellee, with the enactment of CR § 2-103, the Legislature created "new and separate offenses: murder of a viable fetus and manslaughter of a viable fetus." Appellee concludes: "Section 2-103 does not change the meaning of 'another,' or another person, which still excludes fetuses. All Title 2 offenses that criminalize the killing of 'another' continue to mean the killing of another person."

Prior to the enactment of CR § 2-103 in 2005, Judge Charles Moylan, Jr., wrote at the beginning of his treatise on criminal homicide law the following: "Homicide, criminal and non-criminal alike, is 'the killing of a human being by another human being.' . . . The homicide victim and the homicidal agent must both be card-carrying members of *homo sapiens.*" Moylan, *Criminal Homicide Law* § 1.1, at 1 (footnotes omitted). Then, rather presciently, Judge Moylan asked the following question: "[I]s the killing of an unborn fetus criminal homicide?" *Id.* His answer was unequivocal: "[A]n unborn fetus, even in an advanced stage of the mother's pregnancy and even if clearly capable of sustaining life if delivered, is not a proper subject of a homicide. Some other crime perhaps, but not homicide!" *Id.* § 1.2, at 1. Consistent with Judge Moylan's statement of the law prior to the enactment of CR § 2-103, this Court stated: "English Common Law defined manslaughter generally as the unlawful killing *of a person* without the express or implied malice found in murder . . . ." *Bowers*, 227 Md. App. at 323 (emphasis added). We also have said that "[i]nvoluntary manslaughter at common law has been generally defined as the killing *of another* unintentionally and without malice . . . ." *Gibson*, 4 Md. App. at 242 (emphasis added). It is clear then that at the time that the General Assembly enacted the

34

predecessor statute to CR § 2-209 in 1941, the phrase "death of another" referred to a person.

When enacting CR § 2-103, the General Assembly knew the state of the law regarding murder and manslaughter, whether at common law or by statute. *See Collins v. State*, 383 Md. 684, 692-93 (2004) ("We generally presume that the Legislature 'had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law.'" (quoting *Div. of Lab. v. Triangle Gen. Contractors, Inc.*, 366 Md. 407, 422 (2001))). Instead of expanding the concept of "personhood" to include a viable fetus, the General Assembly created a new class of victim, a viable fetus, the death of which could be prosecuted for murder or manslaughter. By doing so, the Legislature in effect modified common law murder and manslaughter, as well as the meaning of "another" in CR § 2-209, to include a viable fetus as a victim. To hold otherwise would have the effect of nullifying CR § 2-103, because there would have been no crime to which the statute could apply. *See Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 170 (2021) (stating that we "avoid constructions that are illogical and nonsensical, or that render a statute meaningless" (quotation marks and citation omitted)). Moreover, there is no logical reason to hold that CR § 2-103 permits the prosecution of common law murder and manslaughter of a viable fetus but not the prosecution for manslaughter by vehicle or vessel of a viable fetus under CR § 2-209. Therefore, this Court holds that the "death of another" under CR § 2-209 has been modified by the enactment of CR § 2-103 to add a viable fetus as a legal victim of that crime.

35

Lastly, appellee's reliance on *Kilmon* is misplaced. As recognized by the trial court, *Kilmon* involved the issue of whether the reckless endangerment statute applied to the intentional ingestion of cocaine by a pregnant woman. 394 Md. at 170. Our Supreme Court noted that CR § 2-103 did not apply to that case because (1) CR § 2-103 "did *not* encompass the reckless endangerment statute but dealt only with unlawful homicides;" and (2) CR § 2-103(f) made "clear that '[n]othing in this section applies to an act or failure to act of a pregnant woman with regard to her own fetus.'" *Id.* at 181. More importantly, the Court's reference to "another" as meaning another person was made in the context of the State's "clear" position that the "'person' allegedly endangered by each appellant's conduct was not the fetus, but the child, after the child's live birth." *Id.* at 173. Thus, in *Kilmon*, the Supreme Court simply did not address the issue of whether the term "another" included both a person and a viable fetus as a result of the enactment of CR § 2-103.

**E. Applicability of CR § 2-103 to CR § 2-209 – As Applied to the Instant Case**

During the legislative process, the House Judiciary Committee amended H.B. 398 by adding a *mens rea* requirement to the prosecution for murder or manslaughter of a viable fetus. As enacted, CR § 2-103(c) provides:

> (c) *Intent.* – A person prosecuted for murder or manslaughter as provided in subsection (b) of this section must have:
>
> > (1) intended to cause the death of the viable fetus;
> >
> > (2) intended to cause serious physical injury to the viable fetus; or
> >
> > (3) wantonly or recklessly disregarded the likelihood that the person's actions would cause the death of or serious physical injury to the viable fetus.

36

The parties agree that only CR § 2-103(c)(3) is at issue in determining the applicability of CR § 2-103 to CR § 2-209 under the circumstances of the instant case. Again, the parties' arguments are best understood by presenting appellee's argument first.

Appellee argues that the requisite *mens rea* under CR § 2-103(c)(3) is not equivalent to the requisite *mens rea* under CR § 2-209(b), because CR § 2-103(c)(3) requires a wanton or reckless disregard "to the viable fetus," whereas gross negligence requires a wanton or reckless disregard "for human life." Appellee contends that, because the Maryland Legislature declined to define a fetus in CR § 2-103 and elsewhere in the Criminal Law Article as a "person" or "human being," a viable fetus is not a person and cannot be construed as human life. Further, appellee argues that CR § 2-103(c)(3) requires knowledge of the viable fetus by the accused. Appellee points out that the Legislature chose *the* viable fetus, as opposed to *a* viable fetus. In so doing, according to appellee, the Legislature intended that the perpetrator know of the potential harm to the viable fetus. Appellee concludes that, because he did not know of the existence of the viable fetus in the instant case, the State cannot establish the mental state required by CR § 2-103(c)(3) in order to convict him of a violation of CR § 2-209.

In response, the State argues that the element of intent, i.e., gross negligence, is the same for CR § 2-103(c)(3) as for CR § 2-209(b). The State further contends that intent is not the same as knowledge and CR § 2-103 contains no language requiring the perpetrator to have knowledge of the existence of a viable fetus as a prerequisite for a prosecution for murder or manslaughter of a viable fetus. According to the State, had the General

37

Assembly intended knowledge of the existence of a viable fetus be a requirement, it would have explicitly done so. The State concludes that the purpose of CR § 2-103(c)(3) "was not the imposition of a knowledge element but rather was to confirm – in express terms – that any prosecution for the death of a viable fetus must include certain proof of intent."

In *Beattie v. State*, this Court stated that "[g]ross negligence results when the defendant is 'conscious of the risk to human life [posed by] his or her conduct,' but he or she nevertheless proceeds, demonstrating 'a wanton or reckless disregard for human life.'" 216 Md. App. 677, 681 (2014) (internal citations omitted). As noted above, the *mens rea* of CR § 2-209(b) is the same as common law gross negligence manslaughter. Moylan, *Criminal Homicide Law* § 12.11, at 240. When, however, the General Assembly enacted CR § 2-103, it decided not to expand the concept of "personhood" to include a viable fetus. Indeed, the General Assembly expressly provided that CR § 2-103 should not be construed "to confer personhood or any rights on the fetus." CR § 2-103(g).

The General Assembly was then faced with the problem of how manslaughter of a viable fetus could be proven. For the element of "gross negligence" in common law gross negligence manslaughter and in manslaughter by vehicle or vessel (CR § 2-209) requires proof that the defendant acted "in wanton or reckless disregard for human life," and a fetus is not considered a "person" or "human being." *See* Moylan, *Criminal Homicide Law* § 1.2, at 1 (stating "that one becomes a human being only when one is born alive"). In other words, proof of common law gross negligence would not result in a conviction for manslaughter of a viable fetus.

The General Assembly solved this proof problem by enacting CR § 2-103(c)(3). The language of section 2-103(c)(3) mirrors the standard of gross negligence with the exception of replacing "human life" with "the viable fetus." By doing so, the General Assembly, in effect, modified the meaning of gross negligence in prosecutions for manslaughter of a viable fetus, both at common law and under CR § 2-209. Therefore, this Court holds that proof of the intent set forth in CR § 2-103(c)(3) will satisfy the requirement of gross negligence in the prosecution for manslaughter by vehicle or vessel of a viable fetus under CR § 2-209.

Our analysis of the applicability of CR § 2-103 to CR § 2-209 under the circumstances of the instant case, however, is not complete. Appellee correctly points out that "[t]he phrase 'the viable fetus' in subsection (c) cannot be ignored." According to appellee, by choosing "the" viable fetus, instead of "a" viable fetus in CR § 2-103(c)(3), the General Assembly "intended the perpetrator to know of the potential harm to the viable fetus."

If the Legislature had used the word "a" viable fetus, instead of "the" viable fetus, in CR § 2-103(c)(3), we would have no hesitancy in concluding that there is no additional element of knowledge required by that subsection. The indefinite article "a, an" is "used before nouns and noun phrases that denote a single but unspecified person or thing." AM. HERITAGE DICTIONARY ENG. LANGUAGE (4th ed. 2000); *see Yellowbird v. N.D. Dep't of Transp.*, 833 N.W.2d 536, 539 (N.D. 2013) ("'An' is an indefinite article, which is equivalent to 'one' or 'any'; but is seldom used to denote plurality" (cleaned up)). The phrase "a viable fetus" is analogous to "human life" in the definition of gross negligence,

39

because neither refer to a person or thing that is identified. On the other hand, the definite article "the" is "used before singular or plural nouns or noun phrases that denote particular, specified, persons or things." *Id.*; *see Yellowbird*, 833 N.W.2d at 539 ("In construing a statute, definite article 'the' particularizes the subject which it precedes and is a word of limitation as opposed to indefinite or generalizing force of 'a' or 'an'" (cleaned up)); *Dale v. Painter*, 765 S.E.2d 232, 240 (W. Va. 2014) ("The definite article 'the' particularizes the subject which it precedes: 'law enforcement officer.' In other words, the statute uses the word 'the' to refer to a specific law enforcement officer."). If, under the principles of statutory construction, we must read the language of the statute "so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory," we certainly cannot change the meaning of a word used by the Legislature or substitute a different word in order to reach a desired outcome. *See Wheeling*, 473 Md. at 376. Therefore, this Court concludes that by using the phrase "the viable fetus" in CR § 2-103(c)(3), the General Assembly intended to add the element of knowledge to the gross negligence *mens rea* in a prosecution for manslaughter of a viable fetus.

The State seeks to avoid the imposition of a knowledge requirement in CR § 2-103(c)(3) by asserting that "Section 2-103 says nothing about 'knowledge' of the existence of a viable fetus as a prerequisite for prosecuting a person for the commission of murder or manslaughter of the viable fetus." The State's argument, however, overlooks the General Assembly's use of "the viable fetus," instead of "a viable fetus," not only in section 2-103(c)(3), but in section 2-103(c)(1) and (2), wherein the General Assembly used the same phrase, "*the* viable fetus," when setting forth the specific intent associated with first-

40

degree murder and/or second-degree specific intent murder. (Emphasis added.) *See* CR §

2-103(c)(1) ("intended to cause the death of *the* viable fetus"); CR § 2-103(c)(2) ("intended

to cause serious physical injury to *the* viable fetus") (emphasis added).

The State also points to the legislative history of CR § 2-103, wherein the House

Judiciary Committee rejected amendments to H.B. 398 offered by Delegate Neil F. Quinter

that would have added "knowing or having reason to know that the victim was a pregnant

woman." *See* Proposed Amendments to H.B. 398 by Delegate Neil F. Quinter (March 10,

2005). The State acknowledges in its brief that Delegate Quinter's amendments were not

to section 2-103 of H.B. 398, but to CR §§ 2-204 and 2-207, which are the penalty

provisions for second-degree murder and manslaughter, respectively. The State did not

indicate, however, that these amendments also increased the penalty for second-degree

murder of a viable fetus from 30 years to 35 years of incarceration and the penalty for

manslaughter of a viable fetus from 10 years to 15 years of incarceration. Because the bill

file for H.B. 398 contains no information as to why the Committee rejected Delegate

Quinter's proposed amendments, such rejection could mean anything from rejecting the

increased penalties, to rejecting a knowledge requirement, to believing that CR § 2-103(c)

already included a knowledge requirement. In sum, the State's arguments on this issue are

unconvincing.

In our view, adding the element of knowledge to a prosecution for manslaughter of

a viable fetus will not elevate the *mens rea* of the crime from general to specific intent. *See*

Moylan, *Criminal Homicide Law* § 12.10, at 237 (stating that "[t]he *mens rea* of gross

negligence manslaughter includes no specific intent"). In *Thornton v. State*, 397 Md. 704

(2007), our Supreme Court noted that "[m]ere knowledge that a result is substantially certain to follow from one's actions is not the same as the specific intent or desire to achieve that result." 397 Md. at 738. Nor does the requirement that the defendant know or have reason to know that the victim was pregnant preclude all prosecutions for manslaughter by vehicle or vessel of a viable fetus under CR § 2-209. We can envision factual circumstances, unlike those in the instant case, where the factfinder could find the requisite knowledge, such as when a pregnant woman is a passenger in a vehicle driven or operated by the defendant in a grossly negligent manner that causes the death of the viable fetus. Finally, a construction of CR § 2-103(c)(3) to require that the defendant know or have reason to know that the victim was a pregnant woman is, in our view, consistent with the overall purpose of the statute, which was to fill the gap in Maryland's law of murder and manslaughter where the victim was a viable fetus in "Laci Peterson-type cases."[13]

In the instant case, it is undisputed that appellee did not know or have reason to know that a pregnant woman was in the car that was involved in a head-on collision caused by appellee's grossly negligent operation of his vehicle. Consequently, the State will not be able to prove an essential element of the charge of manslaughter of a viable fetus under

---

[13] "The real intent of the bill, the House Judiciary Committee chairman said, is to provide justice in Laci Peterson-type cases. Peterson, who was [eight months] pregnant[,] . . . was murdered in December 2003. Under California law, Peterson's husband was prosecuted for two counts of murder." *See Abortion debate endangers resurrected Unborn Victims of Violence bill*, DAILY REC. (Feb. 21, 2005), https://thedailyrecord.com/2005/02/21/abortion -debate-endangers-resurrected-unborn-victims-of-violence-bill/.

CR § 2-209. Accordingly, and for the above reasons, this Court will affirm the trial court's

dismissal of count one, manslaughter by vehicle or vessel in violation of CR § 2-209(b).[14]

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

---

[14] In light of our decision in the instant appeal, this Court will not address, under the doctrine of constitutional avoidance, appellee's argument that CR § 2-103 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment, as well as Article 24 of the Maryland Declaration of Rights. *See Sumpter v. Sumpter*, 436 Md. 74, 92 (2013) (stating that the doctrine of constitutional avoidance "means that when a non-constitutional ground for deciding a case presents itself, we decide the case on that ground rather than the constitutional grounds").